(No. 46751

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. EARL HAWKINS, Appellant.

*Opinion filed June 2, 1975.*

UNDERWOOD, C.J., dissenting.

James J. Doherty, Public ·Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon, Donald M. Devlin, and Marcia B. Orr, Assistant State's Attorneys, of counsel), for the People. ·

MR. JUSTICE WARD delivered the opinion of the court:

Earl Hawkins was found guilty of murder (Ill. Rev. Stat. 1969, ch. 38, par. 9–1) and aggravated battery (Ill. Rev. Stat. 1969, ch. 38, par. 12–4) after a jury trial in the circuit court of Cook County and was sentenced to serve not less than 14 nor more than 15 years on the murder conviction and not less than 1 nor more than 3 years on the conviction for aggravated battery. The appellate court affirmed (18 Ill. App. 3d 1005), and we granted the defendant's petition for leave to appeal.

On the evening of July 5, 1970, a crowd of approximately 75 to 100 people gathered to watch a building on fire which was located in the 4100 block of South Berkeley Avenue in Chicago. At about 11 p.m., while watching the fire, Elmer Freeman was shot and killed, and Michael Mallory was shot and wounded.

Earl Hawkins, the defendant here, and Kenneth Birdsong were indicted for the murder of Freeman and for

aggravated battery against Mallory. Although they were tried in the same proceeding, Hawkins was tried by a jury and Birdsong received a bench trial after waiving his right to a jury.

Terry Lee, a witness for the People, testified that on July 5, 1970, at about 11 p.m., he, Michael Mallory, Elmer Freeman, and James Sutton were standing with a group of about 20 Disciples (a youth gang) that had gathered to watch a fire that had broken out in the 4100 block of South Berkeley Avenue. Their group, he said, was standing on Berkeley at 41st Place facing north. About 20 members of the Black P. Stone Rangers (a rival youth gang) had also gathered at the scene of the fire and were standing a short distance from them on Berkeley facing south at 41st Place. When Lee arrived at the scene of the fire, Kenneth Birdsong, a member of the Rangers, and Willie Smith, a member of the Disciples, were arguing. As they argued, a leader from each gang walked to a position in front of his group and began to talk with each other. Lee said he saw a member of the Rangers hand Birdsong a handgun as the group leaders were talking. Hawkins was standing next to Birdsong when the gun was passed, he said. When the leaders finished their discussion, the rival gangs began shouting at each other. At that point, the witness testified, he saw Birdsong give the handgun to Hawkins and saw Hawkins fire one shot into the crowd of Disciples. Hawkins then gave the handgun back to Birdsong and, the witness said, he saw Birdsong fire the handgun twice toward the Disciples. He heard Elmer Freeman, who was standing next to him before the shooting, scream that he had been hit after the second shot was fired.

Michael Mallory, who was 13 years old at the time of the trial, testified that he was watching a building burning in the 4100 block of South Berkeley Avenue at approximately 11 p.m. on July 5, 1970. He said he did not see who fired the shot that struck him that evening, but said he saw Earl Hawkins at the fire before the shooting

occurred. He said that he had known the defendant for approximately one year before the incident, but said that he was "not friendly" with the defendant.

Kenneth Jordan, another prosecution witness, testified that he was standing with a group of about 25 Disciples gathered to watch the fire on July 5, 1970. He said that he, Terry Lee, James Sutton, and Elmer Freeman were members of the Disciples gang and were present at the fire. He saw the defendant fire the handgun at the group of Disciples and than hand it to Birdsong, who fired the handgun twice in their direction. He said he was standing a few feet from Freeman when the youth was killed.

The witness testified that he was serving three years on probation for a crime which was not described.

James Sutton testified that he was standing near Terry Lee, Kenneth Jordan, and Elmer Freeman at the fire when he heard a gunshot. He immediately turned and saw Birdsong fire two more shots into the group of Disciples. After the third shot he heard Elmer Freeman yell that he had been hit. He said that he saw Hawkins at the scene of the fire but did not see him fire a weapon.

The defendant's father, Orange Hawkins, his mother, Earline Hawkins, and his brother, Charles Hawkins, all testified that the defendant had been at home at the time the shootings took place.

Orange Hawkins testified that the defendant came home at about 9:30 p.m. on July 5, 1970. He ate dinner and watched television before he went to bed at about 10 o'clock. The witness said he saw a fire from his back porch at approximately 11:30 p.m. and went into the defendant's bedroom and awakened him and Charles, his other son, and told them of the fire. He said that he, his wife, Earl, Charles, and the witness' sister, Roxee Shenial, watched the fire until they retired at midnight.

Charles Hawkins, the defendant's brother, testified that he went to sleep at 9 p.m. on the evening of July 5,

1970. At 9:30 p.m. he said his aunt, Roxee Shenial, awakened him and asked him to watch a fire from the back porch. Charles walked into the kitchen where he saw his brother was eating. He said that he watched the fire for five minutes and returned to bed. Earl was still watching the fire he said when he went back to bed.

Earline Hawkins testified that her son, Earl, came home between 9 p.m. and 9:30 p.m. on July 5, 1970. She said that she, her husband, her sister-in-law, Roxee Shenial and her sons, Charles and Earl, talked from the time the defendant came home until he went to bed. She said that she, her husband, Roxee, the two daughters of the witness and Charles began watching a fire from her back porch at approximately 10:30 p.m. She said that her husband did awaken her son, the defendant, that night but she said that the defendant did not leave his room to watch the fire.

The principal contention of the defendant is that the prosecution improperly introduced irrelevant and prejudicial matters during the cross-examination. This occurred, the defendant says, when the prosecutor on the cross-examination of Mrs. Hawkins, the defendant's mother, had suggested that four other witnesses who were members of the Rangers had testified to a different alibi defense for the defendant at a prior family court hearing.

The record shows that the cross-examination of Mrs. Hawkins began with this question: "Q: Weren't you present on August 25, 1970, at a Juvenile Court hearing when your son presented four alibi witnesses saying he was somewhere else"? (At the time of the family court hearing the defendant was not represented by the attorney who represented him at trial.) The record shows that the trial court sustained the defendant's objection to the question but the record further shows that the cross-examiner persisted in addressing substantially the same question to Mrs. Hawkins and suggesting that those witnesses at the family court hearing had testified contrary to the testimony she had given at trial. She was further asked whether

or not she had been present at the juvenile court hearing, and she denied that she had been present in the courtroom at the time the witnesses in question had testified. Mrs. Hawkins also denied that she had ever talked to the defendant about what the four youths were to testify to at the juvenile court proceeding.

After the cross-examination the prosecution called a Chicago police officer in rebuttal. The officer testified that Mrs. Hawkins had been present at the juvenile court hearing at the time the four youths had testified. Mrs. Hawkins was recalled by the defense to the stand, and she again testified that she was not present in the courtroom when the youths appeared to testify, saying she had been ordered earlier to leave the courtroom.

We consider that the defendant's right to a fair trial was seriously prejudiced by the improper cross-examination of Mrs. Hawkins. The extended cross-examination served to inform the jury that at an earlier proceeding an alibi defense had been presented in behalf of the defendant that was different from the one being presented at trial. Mrs. Hawkins had denied ever conferring with her son as to what the youths were prepared to testify to at the earlier hearing and she even denied having been present at the hearing at the time the contrary testimony was given. The record shows that the prosecution persisted in this line of questioning over defense objections, some of which were sustained by the trial court. The cross-examination conducted was an improper attempt to impeach the witness by indicating to the jury that testimony contrary to hers had been given by other persons unconnected with her in the juvenile court proceeding. These insinuations were substantial, repeated, and, we judge, definitely prejudicial. The situation is not unlike that in *People v. Nuccio*, 43 Ill.2d 375, where this court reversed a conviction after a bench trial because of improper insinuations during cross-examination. See also *People v. Sanders*, 357 Ill. 610, 622. We conclude that the defendant was prejudiced in his right

to a fair trial and that the cause must be remanded for a new trial.

It is not necessary to state in this opinion the circumstances under which the prosecution may show that a contradicting defense has been offered for the accused in an earlier proceeding.

The argument of the *People* that should the "impeachment" have been error the error was harmless, citing *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, in light of the clear and conclusive proof of the defendant's guilt, cannot be supported. The defense offered witnesses whose alibi testimony directly contradicted testimony of prosecution witnesses. It cannot be said on this record there was clear and conclusive proof of the defendant's guilt within the meaning of *Chapman* and similar holdings.

For the reasons given, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

I cannot agree that a new trial is required for, in my judgment, defendant's guilt is so clearly established that the alleged error, if thought to be of constitutional stature, was harmless beyond a reasonable doubt. (*Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Gill,* 54 Ill.2d 357.) Two eyewitnesses testified that they saw defendant fire a gun in the direction of the group with which decedent and the injured victim were standing; two other witnesses testified to seeing defendant at the scene of the shootings. Defendant did not testify, and the only testimony contradicting the eyewitnesses was that of defendant's alibi witnesses—his mother, father and brother. Their testimony was sufficiently contradictory (the father stated he had awakened defendant at home to watch the fire; the brother testified that defendant had not

gone to sleep and that he and defendant had watched the fire together from the back porch; and the mother testified defendant had slept through the entire night until the police arrived and did not get up to watch the fire at all) to prompt the appellate court to state "it is difficult to conceive that any jury of 12 reasonable persons would believe this testimony ***."

Additionally, while the majority characterizes the complained-of cross-examination as "substantial," "repeated," "definitely prejudicial" "insinuations," its impact, it seems to me, was substantially less than that characterization would lead one to believe. It would unduly prolong this dissent to quote all of the cross-examination in context. Several illustrations may suffice. The opening question addressed to the mother was:

> "Weren't you present on August 25, 1970, at a Juvenile Court hearing when your son presented 4 alibi witnesses saying he was somewhere else?"

An objection to that question was sustained, but, apart from that, it is not, in my judgment, a necessary conclusion that the jury would deduce from that question that those four witnesses had testified in a manner contrary to the mother's testimony. The "somewhere else" could have been thought by the jury to refer to some place other than the scene of the shootings, an interpretation consistent with the mother's testimony that her son was at home. A subsequent and somewhat similar question resulted in the following:

> "Q. And those four men in fact stated that your son was elsewhere other than—
> DEFENSE COUNSEL: Excuse me judge,—
> THE COURT: Sustained. Sustained.
> DEFENSE COUNSEL: Could we make a statement as to the time, is this before nine—
> THE COURT: The jury will disregard the entire question. Put it out of your minds."

Defense objections, when made to other questions, were, with rare exceptions, sustained, with the result that the

jury was never informed by question or answer as to the content of the testimony of the defense witnesses at the earlier hearing, and I simply cannot agree that serious prejudicial error occurred.

I would affirm the judgment of the appellate court.