THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNICE WALLER, Defendant-Appellant.

First District (4th Division) No. 60883

Opinion filed March 10, 1976.

BURMAN, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Roger Rudich and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Bernice Waller, was tried in a bench trial, convicted of voluntary manslaughter, and sentenced to a term of one to three years of imprisonment.

On appeal she contends that the trial court erred in allowing a witness, who had remained in the courtroom in violation of a motion to exclude witnesses, to testify in rebuttal, where that witness' testimony did not rebut any evidence introduced by the defendant.

On March 10, 1972, defendant returned home from work at about 8:30 p.m. She arrived approximately three hours later than usual to find her husband, Ronald Waller, already home. The couple quarreled and Ronald incurred a stab wound from which he subsequently died.

At trial, just prior to the calling of the State's first witness, the court, on its own motion, moved to exclude witnesses. Both sides responded that all witnesses had been excluded.

The State called two police officers as its only two witnesses. The first officer testified that he went to the Wallers' apartment and found Ronald Waller on the floor. Defendant told him that she had accidentally stabbed her husband. The second officer testified that he talked to defendant at the police station. She told him that she and her husband had argued, the husband then grabbed her arm, and she went to the kitchen. She returned with a butcher knife at which point Ronald

Waller advanced toward her and accidentally pushed himself into the knife.

Defendant and her grandmother both testified that defendant went to the hospital and had a miscarriage in November of 1971, as a result of injuries she received when her husband beat her. She again was in the hospital in February of 1972 because of an incident with her husband. Defendant testified that her husband prevented her from calling her mother, hit her six or seven times in the head or stomach, and called her a "bitch." She picked up a knife from the kitchen to help her in her efforts to call her mother. When she entered the bedroom, "he went berserk and ran up on the knife." She called the police, her mother, and her grandmother.

In rebuttal the State called back the first officer who then testified that he saw no bruises or scratches on defendant when he saw her in her home. Defense counsel objected to the calling of the State's second rebuttal witness, Roxy Brewer, the sister of the decedent. Mrs. Brewer had been sitting in the courtroom throughout the trial. The court ruled that although there had been a motion to exclude, the court would take Mrs. Brewer's testimony under advisement. Upon submission of law the court would rule at a later date as to whether or not her testimony was admissible. No further hearing was held on this matter. Mrs. Brewer testified that in March, 1972, she had a conversation with defendant in which defendant said her husband was angry with her for receiving a candygram at work from an Ed Washington. Mrs. Brewer further testified that in the latter part of February, 1972, she lived downstairs from the Wallers. She heard defendant say, "If you call me a bitch again, I'll stab you with this knife." She then ran upstairs and took a butcher knife from defendant's hands, but prevented her brother from removing defendant from the premises.

The court found defendant guilty of voluntary manslaughter in that her act had been done as a result of sudden and intense passion and in the face of severe provocation. After a hearing in aggravation and mitigation, she was sentenced to one to three years' imprisonment.

On review defendant argues that the trial court committed reversible error when it allowed a rebuttal witness to testify even though that witness had remained in the courtroom in violation of a motion to exclude witnesses and when the testimony did not rebut any evidence introduced by defendant.

■■ The State produces rebutting evidence to explain, repel, contradict or disprove evidence given by the defendant. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546.) "Although testimony that would be proper as evidence in chief should not be reserved for rebuttal,

these matters rest largely within the discretion of the trial court and such rulings will ordinarily not be set aside upon review." (*People v. Lion* (1957), 10 Ill. 2d 208, 217, 139 N.E.2d 757, 762.) The trial judge has further discretion in that he may allow a witness to testify in rebuttal even though that witness has violated an order to exclude witnesses. *People v. O'Malley* (1949), 404 Ill. 165, 88 N.E.2d 454; *People v. Snell* (1966), 74 Ill. App. 2d 12, 219 N.E.2d 554.

Defendant, in the case at bar, testified she did not remember receiving a box of candy on Valentine's Day nor having a conversation with her husband about a box of candy. The State's second rebuttal witness, Mrs. Brewer, sat through the entire testimony after the court's motion to exclude witnesses. She then testified that in March, 1972, defendant told her the victim was angry with defendant for having received a candygram at work from an Ed Washington. Mrs. Brewer further testified that in February, 1972, she heard defendant tell the victim, "If you call me a bitch again, I'll stab you with this knife." On that occasion Mrs. Brewer took a butcher knife from defendant's hands. The State's rebuttal witness rebutted defendant's testimony concerning the candy, but also testified to new matters very important to the State's case in chief. The admission of the testimony of Mrs. Brewer violated the court's own order to exclude witnesses. The question arises as to whether this violation amounts to reversible error.

The State asserts that the issue of intent was raised by defendant and was proper for rebuttal. It relies on *People v. Lion* (1957), 10 Ill. 2d 208, 139 N.E.2d 757, for the proposition that threats made by an accused against the deceased prior to the commission of the criminal act are admissible as evidence of malice and criminal intent. We find the *Lion* facts to be distinguishable from those in the case at bar. In *Lion* witnesses testified as to threats by the accused against the decedent. The defendant denied having made any threats against the decedent and described many kind things he had done for her. A rebuttal witness then related a specific prior threat made by the accused against the decedent. The court, on review, however, made no mention of any motion to exclude witnesses. The trial court in the instant case moved on its own motion to exclude witnesses. Mrs. Brewer, nonetheless, sat through the entire trial and then testified as a rebuttal witness that defendant had previously threatened the decedent with a knife. Neither defendant nor any other witness had testified as to any threats by defendant against decedent.

■■ Our Supreme Court in *People v. Crump* (1955), 5 Ill. 2d 251, 125 N.E.2d 615, questioned the propriety of permitting a witness to testify in violation of the rule excluding witnesses unless his testimony was strictly limited to rebuttal testimony. Although the Supreme Court re-

versed and remanded due to other errors, such trial court action was found not to prejudice the defendant in and of itself. Violation of the rule excluding witnesses has also been found to be inexcusable where a defendant was not proved guilty beyond a reasonable doubt. (*People v. Botulinski* (1943), 383 Ill. 608, 50 N.E.2d 716.) The defendant, how-ever, must show that he has been prejudiced by the testimony of the witness so allowed to testify. (*People v. Hill* (1968), 97 Ill. App. 2d 385, 240 N.E.2d 373; *People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) In *Hill*, no prejudice was found where a witness testified only to a minor, collateral point. Similarly in *Farnsley*, no prejudice was found where rebuttal testimony was merely corroborative.

The trial judge in the case before us admitted the testimony of Mrs. Brewer pending his ruling on its propriety. He then stated that the question as to the relationship between defendant and decedent and the question of a prior threat were before the court. We find from the record that the trial judge considered the testimony of Mrs. Brewer.

Two police officers testified in the State's case in chief that defendant told them she had accidentally stabbed her husband during an argument. Defendant told the court of two prior occasions where her husband beat her. She also stated that "he went beserk and ran up on the knife" during their argument on March 10, 1972. The rebuttal witness whose testimony violated the court's order to exclude witnesses related a prior threat by defendant against decedent with a knife. This testimony did not rebut any prior testimony. This testimony neither related to a minor point nor was it merely corroborative of other testimony. Moreover, the State had listed Mrs. Brewer as a potential witness and yet allowed her to sit in court throughout the trial.

For the foregoing reasons, we find Mrs. Brewer's testimony both to have prejudiced defendant and to amount to reversible error.

Reversed and remanded.

DIERINGER, J., concurs.

Mr. JUSTICE BURMAN, dissenting:

The defendant was charged by indictment with murder and, in a bench trial, she was found guilty of voluntary manslaughter and sentenced to serve a prison term of one to three years. On appeal, the defendant contends that she was denied due process and a fair trial when the trial court erroneously allowed a witness, who remained in the courtroom subsequent to the trial judge granting a motion to exclude witnesses, to testify in rebuttal. In support of this assertion, the defendant maintains that (1) the State consciously knew that the witness,

the defendant's sister-in-law, Roxy Brewer, was present in violation of the trial court's exclusionary rule; (2) the admission of Mrs. Brewer's testimony was improper because it did not rebut any evidence introduced by the defendant; and (3) the defendant was further prejudiced since the rebuttal testimony consisted of prima facie evidence of an offense for which she was not charged. Although my colleagues believe that the defendant was sufficiently prejudiced so as to warrant a reversal, I am of the opinion that the three contentions posited in support of the defendant's basis of appeal are without merit and her conviction should be affirmed.

With regard to the defendant's initial claim, she relies on judicial authority for the propositions that (1) a party who desires to offer the testimony of a witness who violated the exclusionary rule must be without fault for such violation (*People v. Bridgeforth*, 51 Ill. 2d 52, 63, 281 N.E.2d 617, 623; *People v. Viskniskki*, 255 Ill. 384, 391, 99 N.E. 621, 624), and (2) the defendant must show prejudice as a result of the trial court's decision to allow a witness, who violated the exclusionary rule, to testify (*People v. Hill*, 97 Ill. App. 2d 385, 402, 240 N.E.2d 373, 381). Although I do not in theory controvert the legal precepts emanating from the above-mentioned decisions, I do believe that when such principles of law are applied to the factual scenario at bar, such decisions are not dispositive of the defendant's initial assertion.

Concerning the first judicial tenet, the *Bridgeforth* and *Viskniskki* decisions are factually distinguishable from the instant case since in the former actions, the witnesses which the respective trial courts excluded were called in the particular defendant's case-in-chief and not as rebuttal witnesses. Moreover, the State's conduct during the course of the instant trial clearly indicates that it was not responsible for Mrs. Brewer's failure to obey the exclusionary rule. While the defendant indicates in her brief that Mrs. Brewer was not originally listed as a person whom the State might call in the instant case, it has been held that rebuttal witnesses do not have to be listed by the State in order to be eligible to testify. (*E.g., People v. Hawkins*, 18 Ill. App. 3d 1005, 311 N.E.2d 226 (abstract opinion), *rev'd on other grounds*, 61 Ill. 2d 23, 329 N.E.2d 221; *People v. Clark*, 9 Ill. App. 3d 998, 1002, 293 N.E.2d 666, 669.) Notwithstanding the above judicial edict, it is important to note that on July 11, 1973, the State moved to file and the defendant's counsel acknowledged an amended list of witnesses which included Mrs. Brewer's name.

Besides evincing defense counsel's awareness that Mrs. Brewer might be called as a potential witness, the record also demonstrates that there was not a concerted effort by the State to violate the exclusionary order. Although Mrs. Brewer testified on cross-examination that she first learned

that she would be a witness on the day she in fact testified, there is no indication from her testimony at trial that she was cognizant that she would be called as a rebuttal witness. Moreover, in spite of the State's abstinence from calling Mrs. Brewer as a witness during the presentation of its case-in-chief, the record is devoid of any evidence indicating that the State originally planned to call Mrs. Brewer as a rebuttal witness. On the contrary, since she was not present at the scene of the altercation leading to the death of the defendant's husband and could only testify to auxiliary matters, the State considered Mrs. Brewer a potential witness and it was only after the defendant testified that the State decided to ask her to testify. Therefore, in light of the above reasoning, it is inconceivable to conclude that the State wilfully intended to violate the trial court's exclusionary order.

I also believe that Mrs. Brewer's rebuttal testimony did not prejudice the defendant. In the first place, it appears that such testimony was not the paramount consideration in the trial court's determination of the defendant's guilt. As previously mentioned, since Mrs. Brewer was not present at the time of the altercation between the defendant and her husband, she could not expound about what transpired on March 10, 1972. Rather, her testimony was confined to auxiliary matters which included the reference to a prior occasion where the defendant had threatened her husband with a butcher knife. Although Mrs. Brewer graphically described such event, her testimony was refuted by the defendant on surrebuttal when she indicated that (1) Mrs. Brewer never saw her with a knife in her hand on the date in question and (2) Mrs. Brewer never took a knife away from her on that date. Moreover, the trial court itself appeared to discount the alleged prejudice of such testimony when, in reaching its verdict in this bench trial, it (1) rejected the defendant's assertion that her husband was "impaled on the knife as a result of his own thrust or endeavor" and (2) found that the "defendant performed the act which caused the death of her husband." Thus, it is apparent that the focal point for the trial court's decision was not Mrs. Brewer's testimony.

The lack of prejudice inherent in Mrs. Brewer's testimony is further exemplified by defense counsel's failure to pursue his initial objection to Mrs. Brewer's testimony subsequent to the latter taking the stand. While the defendant maintains in her brief that she was prejudiced in part because "Mrs. Brewer heard all the preceding testimony and could structure her own testimony to its best advantage," the conduct of defense counsel both during and following the trial evince the contrary. As the record reveals, when defense counsel made the objection to the rebuttal testimony of Mrs. Brewer, the trial judge indicated that he would hear

the testimony and resolve the issue of its admissibility after counsel submitted legal authority concerning that point. However, counsel for the defendant never proffered such authority during the remainder of the trial nor did he even raise the issue of the admissibility of this rebuttal testimony in the defendant's closing argument nor at the time of the court's pronouncement of finding and sentence, even though the court delayed such pronouncement one week so that a submission of authority could be made. Therefore, in light of defense counsel's abstention coupled with (1) the substantive content of the rebuttal testimony as well as (2) the trial court's own remarks concerning the defendant's guilt, Mrs. Brewer's rebuttal testimony was proper and did not prejudice the defendant so as to warrant a reversal of the trial court's judgment.

Regarding the defendant's second assertion, she contends that Mrs. Brewer's testimony was improperly admitted since (1) it did not rebutt any evidence introduced by the defendant and (2) the State did not lay a proper foundation on cross-examination for impeachment by a prior inconsistent statement. I am not in accord.

It is well settled in Illinois that the purpose of rebuttal testimony is to explain, repel, contradict, or disprove evidence produced by the defendant in his case-in-chief (*e.g., People v. DeHoyos,* 31 Ill. App. 3d 12, 17, 332 N.E.2d 643, 647; *People v. Green,* 26 Ill. App. 3d 662, 668, 325 N.E.2d 316, 321) and may properly contradict the defendant's testimony as to a material issue. (*People v. Allen,* 27 Ill. App. 3d 1054, 1064, 327 N.E.2d 387, 895; *People v. McGhee,* 20 Ill. App. 3d 915, 922, 314 N.E.2d 313, 319). Moreover, as the majority concedes and neither side controverts, the admission of rebuttal testimony is a matter left to the discretion of the trial court and its exercise thereof will not be disturbed on review unless an abuse of discretion is shown. (*People v. Gentry,* 19 Ill. App. 3d 861, 863, 312 N.E.2d 441, 443; *People v. Schulz,* 1 Ill. App. 3d 212, 218, 273 N.E.2d 736, 740, *supplemented,* 1 Ill. App. 3d 219, 276 N.E.2d 350.) Further, evidence properly admissible in a party's case-in-chief may, however, be offered in rebuttal within the sound discretion of the trial court, and, where the evidence tends to explain, repel, contradict or disprove the evidence of the defendant, the fact that it may have been offered in chief does not preclude its admission in rebuttal. *E.g., People v. Daugherty,* 43 Ill. 2d 251, 255, 253 N.E.2d 389, 391; *People v. Hawkins,* 18 Ill. App. 3d 1005, 311 N.E.2d 226 (abstract opinion), *rev'd on other grounds,* 61 Ill. 2d 23, 329 N.E.2d 221.

Applying these legal precepts to the case at bar, the trial court did not abuse its discretion in admitting Mrs. Brewer's testimony. Besides refusing the defendant's assertions that (1) she did not remember receiving a box of candy at work and (2) that she called the police after

the altercation with her husband, Mrs. Brewer's testimony most importantly rebutted the defendant's version concerning her prior relationship with her husband. As revealed in the record, the defendant testified that on the night in question, she had no intention of killing nor inflicting serious harm to her husband. She expounded that even though her husband had struck or beaten her on prior occasions, she had never threatened him nor would do anything to harm him. However, Mrs. Brewer's testimony placed the defendant's remarks into a different factual perspective since it evinced the latter's prior threats as well as violent tendencies towards her husband. As noted by the majority, Mrs. Brewer testified that in the latter part of February, 1972, she overheard a quarrel between the Wallers wherein the defendant threatened to kill her husband with a butcher knife if he again called her a "bitch." She further related that she subsequently took the knife from the defendant and threw it into the kitchen sink. While the defendant concedes that she would not have raised an objection if such testimony was elicited in the State's case-in-chief, I believe that in light of the above enunciated legal precepts coupled with the judicial tenet that prior threats made by an accused to do violence to a person eventually slain are admissible to show malice and criminal intent (*People v. Slaughter*, 29 Ill. 2d 384, 390, 194 N.E.2d 193, 196, *rev'd on other grounds*, 39 Ill. 2d 278, 235 N.E.2d 561; *People v. Lion*, 10 Ill. 2d 208, 217, 139 N.E.2d 757, 762), the admission of such testimony to the defendant's intent to commit the crime for which she was charged, namely, murder, it was proper in rebuttal.

There is also no propriety to the defendant's contention that the State failed to lay a proper foundation on cross-examination regarding her prior threats. Although the defendant relies on judicial authority (*People v. Henry*, 47 Ill. 2d 312, 265 N.E.2d 876) as well as the fact that she was not asked on cross-examination whether (1) she had ever threatened to stab her husband nor (2) if Mrs. Brewer ever intervened in an argument she had with her husband, it must be remembered that a defendant may not claim for the first time on review that testimony as to a prior threat by a defendant toward the decedent was not admissible because there was no foundation. (*People v. Slaughter*, 29 Ill. 2d 384, 391, 194 N.E.2d 193, 197, *rev'd on other grounds*, 39 Ill. 2d 278, 235 N.E.2d 561.) While the defendant made numerous objections to various portions of Mrs. Brewer's testimony, the record is devoid of any objection lodged by defense counsel during Mrs. Brewer's rebuttal testimony that the State did not lay a proper foundation concerning the defendant's prior threats. Even assuming arguendo that such an objection was proffered, the purpose of laying a proper foundation for impeachment by a prior inconsistent statement, namely, "to protect the witness against unfair surprise"

and to permit his explanation of the prior statement (*People v. Henry,* 47 Ill. 2d 312, 321, 265 N.E.2d 876, 882), was still afforded the defendant in the instant case. As previously mentioned, even though the defendant never denied threatening her husband in the latter part of February, 1972, she did testify on surrebuttal that (1) Mrs. Brewer never saw her with a knife in her hand on that date nor (2) did she remove a knife from her hand on that occasion. Taking into consideration this attempt to refute Mrs. Brewer's testimony, I therefore believe that the defendant was not unfairly surprised nor was she precluded from explaining the statements of Mrs. Brewer. Hence, it cannot be said that that portion of Mrs. Brewer's testimony prejudiced the defendant.

The defendant's final contention is also insufficient to warrant a reversal of her conviction. While the defendant maintains that Mrs. Brewer's testimony establishes a prima facie case for the offense of aggravated assault (Ill. Rev. Stat. 1973, ch. 38, par. 12—2) and thus violates the edict stemming from *People v. Hicks,* 133 Ill. App. 2d 424, 433, 273 N.E.2d 450, 457, wherein, it was held that improper rebuttal testimony pertaining to matters outside of the defendant's evidence and relating to crimes distinct from that charged resulted in "prejudicial error which prevented [the] defendant from obtaining a fair trial," such underlying rationales are inapplicable to the case at bar. Firstly, the *Hicks* decision is factually distinguishable from the instant case since in the former action, the testimony ruled improper (1) related to a series of threats against third parties which were divergent from the circumstances for which the defendant was being prosecuted and (2) pertained to the defendant's general character and reputation and not to the issue of the intent of the defendant. Secondly, although I have no objection to arguing in the alternative, this final assertion is totally irreconcilable with the intimation made by the defendant in support of her second contention, namely, that Mrs. Brewer's testimony went directly to the issue of the defendant's intent to commit the offense for which she was charged. As the defendant concedes in her brief, the sole purpose of Mrs. Brewer's rebuttal testimony was to demonstrate the defendant had violent tendencies and had previously threatened her husband. Moreover, the defendant did not controvert the judicial precept sanctioning the admissibility of an accused's prior threats as evincing malice and criminal intent. Further, the defendant acknowledges that had the State introduced Mrs. Brewer's testimony in its case-in-chief, she would have no objection. The logical inference to be derived from such comments is a cognition on the defendant's part that such rebuttal testimony did not exemplify the offense of aggravated assault, but was proffered to directly refute the defendant's claim that she loved her husband and would never do any-

thing to harm him. Therefore, for the foregoing reasons, the defendant's final contention is without merit and, coupled with the inadequacies of her other arguments, her conviction should have been sustained.