Steven Mark **DAVIDSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–198.

Court of Criminal Appeals of Oklahoma.

June 3, 1976.

Richard A. Hoffman, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Steven Mark Davidson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–1145, for the offense of Robbery With Firearms, in violation of 21 O.S.1971, § 801. His punishment was fixed at a term of twelve (12) years' imprisonment, and

from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the facts of this case are as follows. On May 26, 1975, Donna Jean Lewis, age 17, and Sharon Lawson, age 16, were employed at Winchell's Donut House at 1907 South Harvard in Tulsa, Oklahoma. At approximately 5:30 p.m., Donna Jean Lewis was in the back of the store and Sharon Lawson was in the customer service area mopping the floor. At this time a young man entered the store and walked up to the service counter. When Ms. Lawson asked if she could help him, he pointed a gun at her and with his free hand, placed a red handkerchief over part of his face. He told Ms. Lawson repeatedly that he wanted the money. Ms. Lewis walked into the customer service area while the foregoing was taking place. Once she perceived what was happening she told Ms. Lawson to give him the money from the cash register, which was approximately $36.00.

After the young man left the shop, Ms. Lawson ran to the back door and observed a blue Volkswagen leaving the area. She noticed on the rear window a local radio station sticker which read "KMOD," and two people in the car. Ms. Lawson telephoned the police to report the robbery and gave a description of the blue Volkswagen, including a description of the "KMOD" sticker.

Both Ms. Lewis and Ms. Lawson testified that the young man who robbed the shop was approximately 20 years old, had shoulder length hair, mustache and was wearing blue jeans. In court they both identified the defendant as the young man who had robbed the donut shop. They also identified two State Exhibits, a .44 caliber Magnum pistol with a ten inch barrel, and red handkerchief, as those used by the defendant in the course of the robbery.

Detective Fred L. Parke of the Tulsa Police Department was in the vicinity of the donut shop when he received a broadcast over his police radio that the donut shop had been robbed by a man with a gun, and that the robber had fled in a blue Volkswagen which had a KMOD radio station window sticker. Detective Parke was en route to the donut shop when he observed a blue Volkswagen traveling in the opposite direction. According to Detective Parke's testimony, the vehicle matched the description of the one described in the police broadcast. He followed the Volkswagen for a few blocks until it stopped in the middle of the street, whereupon he exited his unmarked car, withdrew his revolver and advised the two occupants that he was a police officer. As he started to approach the Volkswagen, it took off and the officer began pursuit. A high speed chase ended when the Volkswagen collided with another police car which had been set up as a roadblock.

Detective Parke identified the defendant in court as the passenger in the Volkswagen. He testified that in the floor space under the passenger seat, where the defendant had been seated, he found a brown pistol case which contained a long barreled .44 caliber Magnum pistol, a red handkerchief, and a multicolored shirt (when arrested the defendant was bare from the waist up). Parke also testified that at the Tulsa Police Headquarters he removed $36.00 in bills from the defendant's pants pocket.

After the defendant and the driver of the Volkswagen had been transported to police headquarters, they participated in a lineup with four other men. Ms. Lewis and Ms. Lawson attended the lineup and identified the defendant as the man who robbed the donut shop.

The defense called Robert Hamernik as a witness on behalf of the defendant. Mr. Hamernik testified that he had known the defendant all of the defendant's life and that the defendant had a good reputation in the community.

In the first of his three assignments of error the defendant alleges that the trial court erred in admitting items of physical evidence which were not personally marked

by the arresting officer who testified at trial as to the identity of the evidence. The items in question are the pistol allegedly used in the robbery, the handkerchief allegedly used by the defendant, a brown pistol case, a long sleeved multicolored shirt, and $36.00 in cash removed from the defendant's person; all the items except the money were recovered from the floorboard on the passenger side of the Volkswagen. They were admitted into evidence as State's Exhibits Nos. 1 through 5, respectively.

Detective Parke testified that he personally initialed and dated the pistol, pistol case and the money, and placed them in the police property room. He further testified that Officer Camblin had initialed and dated the handkerchief and multicolored shirt in the presence of Detective Parke, and that those items had remained in the police property room until they were brought to court for the trial.

■ The defendant contends that a proper chain of custody was not established as to the items of evidence not personally marked by Detective Parke and, therefore, they were not admissible. In his brief it is incorrectly asserted that Detective Parke only marked the money found on the defendant's person. Thus, we only consider his contention as to the handkerchief and multicolored shirt, and in so doing we find it to be without merit.

■ The basis for our conclusion is the case of *Jones v. State,* Okl.Cr., 507 P.2d 1267 (1973), wherein we stated:

". . . To create a complete chain of evidence it is not necessary that each link have personal knowledge of each and every other link. It is only necessary that a reasonable person be able to logically assume from the testimony of each link that the chain was complete. . . ." (p. 1270)

Also see, *Ryder v. State,* Okl.Cr., 513 P.2d 593 (1973). Furthermore, in meeting the burden of a reasonable certainty that there had been no alteration or tampering with physical evidence, and where there is the barest speculation that tampering could have occurred, it is proper to admit the evidence, letting any doubt go to the weight of the evidence. *Trantham v. State,* Okl. Cr., 508 P.2d 1104 (1973).

The defendant's next assertion of error is that inculpatory statements made by him were inadmissible because they were not voluntarily made. He contends that the State failed to meet its heavy burden in proving that the statements were voluntary, and that the nature and consequences of his rights or his statements were not explained to him.

■ In regard to the requirements of a voluntary confession, this Court in *Martinez v. State,* Okl.Cr., 496 P.2d 416 (1972), held that a voluntary confession is one that is made by an accused freely and voluntarily, without duress, fear or compulsion in its inducement, and with full knowledge of the nature and consequences of the confession. We have examined the record and are of the opinion that the defendant's contentions are without merit; there is a sufficient showing that the defendant's statements were voluntarily made and the State's burden was met.

Testimony of Detective Parke reveals that after the defendant had been transported to the Tulsa City Jail, and during the booking process, he asked the defendant where he had obtained the pistol allegedly used in the robbery. The defendant stated that he had borrowed it from a friend. He further stated that he had been drunk and that he had been "talked into doing the robbery." Prior to asking the defendant any questions, Detective Parke stated he had advised the defendant of his Miranda rights. All of the Miranda warnings were given, including the admonition that anything said could and would be used against him in a court of law. In Detective Parke's opinion the defendant did not appear intoxicated, but was coherent and understood his rights. On cross-examination Detective Parke stated that he did not try to influence the defendant to make any statements, but that the defendant's statements were freely given.

Taking into consideration all the circumstances surrounding the making of the statements by the defendant, we conclude that he was properly advised of his constitutional rights, that he knowingly and intelligently waived those rights, and it was not error for the trial court to admit into evidence the statements of the defendant. See, *Penn v. State*, Okl.Cr., 456 P.2d 606 (1969).

The defendant's final assignment of error asserts that the trial court erred in not granting a mistrial because of an improper objection by the prosecutor to statements made by defense counsel during closing argument. The defendant contends that such conduct by the prosecutor was prejudicial to his rights and improperly influenced the jury.

In closing argument defense counsel made two references to the fact that the defendant did not have a criminal record. There is no evidence in the record that the defendant had a criminal record. When the second reference was made, the prosecutor objected stating that it was improper for defense counsel to remark that the defendant did not have a criminal record. Defense counsel then moved for a mistrial on the basis that the prosecutor's objection implied that the defendant did have a criminal record. The trial court overruled both the prosecutor's objection and defense counsel's motion for mistrial.

■ In *Sands v. State*, Okl.Cr., 542 P.2d 209 (1975), this Court stated:

"The determination of whether or not conduct and remarks of counsel will serve as a basis for reversal is contingent upon the effect which said remarks have on the rights of defendant. We must keep in mind that the defendant's rights are of utmost importance and if remarks of the prosecutor, though inappropriate or rude, do not affect the rights of the defendant, then they shall serve no basis for reversal. . . ." (p. 213, Citations omitted)

In the case at bar, we do not find any prejudice to the rights of the defendant, nor can we say that the conduct of the prosecutor improperly influenced the jury to the detriment of the defendant. The prosecutor's objection went to the point that defense counsel's remarks were improper. It was the defense counsel himself who made the statement that the prosecutor's remarks implied the defendant had a criminal record. We are not saying the jurors could not have understood the implication of the prosecutor's objection on their own; however, defense counsel's statements brought the implication more clearly to the jury's attention. We are of the opinion that any implication as to whether defendant had a criminal record was invited by defense counsel and was a product of his statements and was not necessarily attributable to the remarks of the prosecutor. Therefore, we find no error by the trial court in denying the defendant's motion for a mistrial.

For all of the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED*.