THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD SCHULZ, Defendant-Appellant.

(No. 70-267;

Second District—September 17, 1971.

Murphy, Griffin & Dixon, of Aurora, for appellant.

William R. Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, and Leo Wotan, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant, Richard Schulz, was indicted by the grand jury of Kane County for the offense of Unlawful Sale of Narcotic Drugs in violation of section 22—3 of the Illinois Criminal Code. The matter proceeded to trial before a jury and the defendant was found guilty and sentenced to serve 10 years to 10 years and one day in the Illinois State Penitentiary. This appeal followed.

There is little dispute as to the facts in the case and they can be briefly related. On September 30, 1968, Inspector Michael Figueroa of the Illinois Division of Narcotics Control was at the home of one Jeffrey Lynch during the course of a narcotics investigation in the Aurora area. Figueroa was at the home to arrange a purchase of narcotics and Lynch

telephoned the defendant for that purpose. Figueroa and the defendant had a telephone conversation at that time in regard to a possible purchase of marijuana. Figueroa subsequently telephoned the defendant at his home on two occasions and once at his place of his employment to arrange the purchase. On October 17, Figueroa met Schultz in a parking lot in Aurora and they drove together in Schultz' automobile to his home where he picked up a large plastic bag containing green plant material. They returned to the parking lot where Schultz gave Figueroa the large bag together with a smaller bag of material that he removed from under the seat of his car and some capsules in exchange for $95.00 in marked money. Three police officers were in the parking lot in unmarked surveillance cars and observed the transaction.

The defendant first contends that the State failed to show that the plant material allegedly sold to Figueroa was in fact a narcotic drug. Section 22-2-17 of the Illinois Criminal Code (Ill. Rev. Stat., 1969, Ch. 38, par. 22—2—17) defines marijuana as follows:

"(3) Cannabis includes all parts of the plant Cannabis Sativa L (commonly known as marihuana), whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, including tetrahydrocannabinol (THC) and all other cannabinol derivatives, whether produced directly or indirectly by extraction, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil or cake, of the sterilized seed of such plant which is incapable of germination."

Miss Paula Cardozzi, a chemist at the Illinois Bureau of Criminal Identification in Joliet, testified that she analyzed the plant material sold to Figueroa by extracting the resins and testing them with another chemical agent. She was able to state, as a result of that test, that the resins so extracted were in fact marijuana resins. On cross examination, however, Miss Cardozzi admitted that there was no way that she could determine if the extracted resins came from the leaves or the stalk of the plant. Since the statute makes an express exemption of the stalk from classification as a narcotic drug, the defendant contends that the State failed to sustain the burden of proof that the material was in fact a prohibited narcotic.

█ Section 22—44 (Ill. Rev. Stat. 1969, ch. 38, par. 22—44) provides

that in any action or proceeding brought for the enforcement of the Act, the burden of proof is upon the defendant to show that the plant material offered in evidence is exempt from the statute. The cases hold that if there is sufficient evidence in the record to raise a reasonable possibility that the exemption applies, thus creating a reasonable doubt of the guilt of the defendant, then he has met that burden of proof. The *People v. Williams*, 23 Ill.2d 549, 555, 556; *People v. Marichez*, 73 Ill. App.2d 230, 233.

Although the defendant did not offer any direct evidence that the plant material sold to Figueroa came within the exemption of the statute, it is argued that the testimony of the chemist, as brought out in cross examination, raised a reasonable possibility that the resin was extracted from the stalk and was thus exempt. However, such a possibility does not appear to us to be reasonable when the testimony of the chemist is considered in its entirety. She also testified that she performed a microscopic examination of the plant material to determine if it could be marijuana before she conducted the chemical analysis. She discovered on the leaves of the plant tiny hairs characteristic of marijuana. Although other plants could have similar appearing hairs, it was her opinion based on her microscopic and chemical examinations ". . . that the plant material contained marihuana and its resins." We feel that the evidence of the characteristic hairs on the leaves of the plant that itself contained marijuana resins was sufficient proof that the material was in fact marijuana as defined in the Act and that the defendant did not sustain his burden to show that it was within the expressed exemption.

The defendant also contends that the State failed to establish a foundation for the admission into evidence of the narcotics since it did not show a sufficient continuity of possession between the time it was obtained by Figueroa and analyzed by Miss Cardozzi. The rule is well established that the State has the burden of showing a continuous chain of possession to establish the necessary foundation to admit the material into evidence. The *People v. Cain*, 35 Ill.2d 184, 188; The *People v. Anthony*, 28 Ill.2d 65, 68.

Figueroa identified a brown paper bag offered into evidence as the bag given to him by the defendant at approximately 6:00 P.M. on October 17. He also identified two plastic bags inside the paper bag as the bags of plant material sold to him. All three bags were marked with the date and the initials of Figueroa and the other surveillance agents shortly after the sale took place. Figueroa then sealed the bags in a large, yellow "evidence" envelope and kept the envelope in his custody until he delivered it to the Bureau of Criminal Identification in Joliet at approximately 9:00 P.M. The only person at the Bureau at that hour was

Gordon Kingman, a fingerprinting technician. Kingman testified that the envelope was sealed tight when it was given to him by Figueroa and that he, in turn, placed the envelope in the internal mailbox of Miss Cardozzi. Kingman locked the building when he left around midnight and it was not re-opened until the day shift, including Miss Cardozzi, arrived the next morning. She testified that she placed the sealed envelope into an evidence vault at the Bureau where it remained until she took it out on December 1 or 2 to conduct her analysis. She then broke the seal and found the brown paper bag with the plastic bags of plant material inside.

It was brought out that the internal mail box was accessible to others in the Bureau and that at least 7 other chemists would have access to the evidence vault. In addition, Miss Cardozzi admitted that it was possible that in the course of her analysis of the material she might have left it for a few moments unguarded on her work table. The defendant maintains that, under the circumstances thus disclosed, the State did not meet that burden of showing a continuous chain of possession as required by law.

We disagree. Although it appears that other chemists or personnel employed by the Bureau had access to the envelope delivered by Figueroa, it is undisputed that the seal was unbroken from the time he placed the evidence into the container until it was opened by Miss Cardozzi. There is no suggestion that the material had been altered or handled in any manner. In the absence of such suggestion, we believe that the continuity of possession was sufficiently established to admit the bags and their contents into evidence. The *People v. Cain*, 35 Ill.2d 184, 188; The *People v. Norman*, 24 Ill.2d 403, 407.

The defendant also advances the defense of entrapment as defined in the Illinois Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 7—12):

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

When Figueroa first talked to the defendant on September 30, he inquired about the possible purchase of a kilo (about 2½ pounds) of marijuana. According to Figueroa, the defendant told him that he was expecting a large shipment from Mexico any day and that he should call again. Figueroa did call again on October 8 and 14 and arranged, on the 15, to purchase a smaller amount on the 17 since the Mexican shipment

had not arrived. Schulz admitted the telephone calls but testified that he told Figueroa on September 30 that he didn't want anything to do with it. He did tell Figueroa about a shipment from Mexico but, he testified, he did so in an attempt to "delay" and put him off. Finally, out of desperation, according to Schulz, he agreed to sell a smaller quantity to get the persistent Figueroa "off his back".

█ █ The record discloses that the defense was argued to the jury and that they were adequately instructed on the law of entrapment by the court. We have recently said in the case of *People v. Gonzales,* 125 Ill.App.2d 225, 232, that "Entrapment is not available to one who has the intention and design to commit the criminal offense, and who does commit the essential acts constituting it, merely because a law officer or his agents, for the purpose of securing evidence, affords such person the opportunity to commit the act, or purposely aids and encourages a defendant in its perpetration". Although there is a dispute as to the exact content of the conversations between Figueroa and the defendant that led to the sale, the record adequately supports the determination of the jury that the defendant had not been entrapped. There is no entrapment where a law officer does no more than provide the defendant the opportunity to commit a criminal offense. *People v. Morgan,* 98 Ill.App.2d 435, 438; *People v. Johnson,* 66 Ill.App.2d 465, 470; *The People v. Clay,* 32 Ill.2d 608, 610.

█ The defendant next argues that the evidence envelope itself should not have been submitted to the jury since it bore the markings "sold by Schulz" on the exterior. Since Schulz admitted he had sold the contents of the envelope, we cannot see that he could conceivably be prejudiced by the markings on the outside. We do agree, however, that Figueroa's testimony relative to his belief that the defendant was a supplier of dangerous drugs was improper and should have been stricken on the request of defense counsel. However, as is well known, not all error is fatal and if the error has not affected a substantial right of the accused, it should be disregarded. Ill. Rev. Stat. 1969, ch. 110 A, sec. 615 (a); *People v. Price,* 96 Ill.App.2d 86, 96.

█ Finally, it is contended that it was improper to permit Figueroa to virtually repeat his entire testimony when he was recalled as a witness to rebut the defendant's testimony relative to their telephone conversations. The admission of testimony in rebuttal is a matter largely left to the discretion of the trial court and will ordinarily not be set aside on review. (*People v. Shannon,* 94 Ill.App.2d 110, 118.) We do not find that the trial court abused its discretion in this instance.

█ However, in view of the new Illinois "Cannabis Control Act", we hereby affirm the conviction of the defendant, but remand the cause,

on the court's own motion to the trial court, and direct that within fifteen days of the filing of this opinion the defendant be brought before said court for disposition under the now applicable provisions of the "Cannabis Control Act" as amended; and further, that within fifteen days of conclusion of said hearing, the trial court is to certify to this court the evidence taken, together with the judgment entered. *People v. McCloskey* (2nd Dist. No. 70—190.)

Judgment affirmed in part; cause remanded with directions. Court retains jurisdiction for further review, if necessary.

MORAN, P. J. and GUILD, J., concur.

### SUPPLEMENTAL OPINION

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The conviction in this case was affirmed and we remanded the case to the Trial Court to conduct a hearing under the provisions of the "Cannabis Control Act" and report back to this Court its findings within a short date.

Now, however, in view of *People v. McCabe*, Supreme Court Docket No. 42674, filed Oct., 1971; rehearing denied November 24, 1971, 49 Ill.2d 338 (1971), and *People v. Hudson*, Supreme Court Docket No. 43994, filed Nov. 30, 1971, 50 Ill.2d 1 (1971), there is no necessity for a hearing under the "Cannabis Control Act."

Therefore, the judgment of the Trial Court is reversed.

Judgment reversed.

MORAN and GUILD, JJ., concur.