**Kenny ATKINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-77-490.**

Court of Criminal Appeals of Oklahoma.

Dec. 20, 1977.

Douglas W. Sanders, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Kenny Atkins, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, LeFlore County, for the offense of Unlawful Distribution of a Controlled Substance, Marijuana, in violation of 63 O.S.1971, § 2–401. On March 27, 1977, the matter was tried before a jury who returned a verdict of guilty and recommended seven (7) years in the custody of the Department of Corrections. Thereafter, on the 1st day of April 1977, the defendant was sentenced in accordance with the jury's verdict. From said judgment and sentence he has filed his timely appeal.

At the trial the State called as its first witness Officer Claude Graves who testified that he was an undercover narcotics agent for the Fort Smith, Arkansas, Police Department. He testified that at approximately 8:00 p. m. on the 22nd day of November, 1976, he and another undercover agent by the name of George Scharg had occasion to go to the Atkins residence in Arkoma, Oklahoma. After being invited into the house by defendant, Mr. Scharf asked about some marijuana, and he and the defendant went into a bedroom. After talking a few minutes the defendant reached down into the bottom of a closet and produced two sacks. At this time, Officer Graves was asked to leave the room. Approximately two or three minutes later, Officer Scharf came into the living room and asked the witness to return to the bedroom. At this time the defendant proceeded to check the credentials of the witness and told him to pick out either of two brown paper bags lying on the floor. The defendant stated that there was a pound of marijuana in each bag. Officer Graves then testified that he gave the defendant $125.00.

Officer Graves thereupon identified the defendant as the person who sold him the substance in the sack and he identified State's Exhibit No. One as the substance he bought from the defendant on November 22, 1976. Officer Graves then testified that upon leaving the house, he kept the marijuana in his possession until it was turned over to Detective Yates at 9:30 p. m. on November 22, 1976, (Tr. 10).

The next witness called on behalf of the State was Officer Glen Yates, who testified that he was also employed by the Fort Smith, Arkansas, Police Department and that he met Officer Graves at approximately 9:30 p. m. at a place known as Woodlawn Memorial Park Cemetery, in Fort Smith, Arkansas. At this point, Officer Graves turned over to him, State's Exhibit No. One, which was transported to the Fort Smith Police Department, where it was logged into evidence and assigned an evidence number. At this Police Station, Officer Yates observed Officer Grizzle who had accompanied him throughout the evening fill out an evidence card and tag the bag in his presence. (Tr. 2) Officer Yates then testified that the substance was kept in the Fort Smith Police Department evidence locker until transported to the LeFlore County Courthouse on December 15, 1976. Officer Yates further testified that only he and Detective Grizzle had access to the evidence locker, which was secured by lock and key.

Officer Yates testified that the bag was turned over to a Jane Bates of the District Attorney's Office in LeFlore County, Poteau, Oklahoma.

The third witness called by the State was Detective Terry Grizzle of the Fort Smith Police Department. He testified that he accompanied Officer Yates to the Woodlawn Memorial Park Cemetery, in Fort Smith, where they received from Officer Graves State's Exhibit No. One, which he identified. He also testified that the substance was tagged, logged into evidence and placed in a locker.

It was then stipulated that if Jane Bates had testified she would have stated that she received State's Exhibit No. One and its contents from Officer Yates in LeFlore County Courthouse on the 15th day of December, 1976, and that she transported the same to the State Laboratory at McAlester and placed it in the evidence locker at that location. (Tr. 28–29).

The final witness called by the State was Gerald Belyeu, who after being qualified as a forensic chemist employed by the State Bureau of Investigation, at McAlester, Oklahoma, testified that in his opinion, the contents in State's Exhibit No. One was cannabis sativa.

After the State rested the defendant then called four (4) witnesses in his own behalf. These were members of the Atkins household who essentially testified that on the night in question, two men whom they later learned were undercover agents, came to their home and were told to leave and never come back after attempting to buy marijuana from the defendant. The defendant took the stand in his own behalf and denied selling the marijuana, and stated he asked the State's witnesses to leave after they attempted to buy marijuana from him.

On direct-examination, the defendant admitted he had been convicted of a felony, to wit; Receiving Stolen Property.

For his first assignment of error the defendant alleges that the trial court committed error when it allowed the introduction into evidence of State's Exhibit No. One, i. e., the marijuana. In support of his argument, the defendant asserts two matters. These are: That the substance later identified as marijuana was improperly admitted because of a lack of identification as the exact substance purchased from the defendant on the evening in question. And secondly, that there was a break in the chain of custody due to delay or time gap created from the fact that the substance was confiscated on the 22nd day of November, 1976 but not delivered to the Oklahoma State Crime Bureau Laboratory until December 15, 1976.

██ We hold that the trial court correctly admitted State's Exhibit No. One into evidence. Under his first argument concerning the identification of State's Exhibit No. One, the defendant alleges that the failure of Officer Graves to mark the substance prior to turning it over to Officer Yates in the cemetery, is fatal. We think not. Officer Graves identified the substance as the marijuana that he bought from the defendant on November 22, 1976, (Tr. 10). Officer Yates then identified the substance as the very same that he received from Officer Graves on that same night in the cemetery. It was then transported to the Fort Smith Police Department, properly tagged and marked and placed in a locked compartment.

██ At this point it should be noted that upon the defendant's objection to the introduction of State's Exhibit No. One, the trial court excused the jury and conducted an in camera hearing on the admissibility of this evidence. At the conclusion of that hearing the trial court properly ruled that there was sufficient evidence to admit the exhibit and the weight and credibility of the Officer's testimony was a matter for the jury. In the case of *Jones v. State*, Okl.Cr., 507 P.2d 1267 (1973), we stated:

". . . To create a complete chain of evidence it is not necessary that each link have personal knowledge of each and every other link. It is only necessary that a reasonable person be able to logically assume from the testimony of each link that the chain was complete. . . ."

Also see, *Ryder v. State*, Okl.Cr., 513 P.2d 593 (1973). Furthermore, in meeting a burden of a reasonable certainty that there had been no alteration or tampering with physical evidence, and where there is the barest speculation that tampering could have occurred, it is proper to admit the evidence, letting any doubt go to the weight of the evidence. *Trantham v. State*, Okl.Cr., 508

P.2d 1104 (1973). Also see *Davidson v. State*, Okl.Cr., 550 P.2d 955 (1976).

■ For his second contention under this assignment of error the defendant alleges that there was a gap of approximately 21 days between the time the evidence was confiscated and the time it was received at the State Crime Bureau Laboratory. In support of his argument, the defendant cites as authority our recent holding in *Faulkenberry v. State*, Okl.Cr., 551 P.2d 271 (1976). However, in the *Faulkenberry* case, *supra*, the facts were essentially different. In that case there was an *unexplained* ten day gap before delivery to the State Crime Lab. In addition there was no testimony as to how the Exhibit arrived at the crime lab.

In the instant case there is no such unexplained gap and there is direct evidence as to how the substance arrived at the State Bureau. In the *Faulkenberry* case, *supra*, there was no showing at all as to where the evidence was during this ten day period. In the instant case, the evidence is clear that the substance was locked in the property room of the Fort Smith, Arkansas, Police Department and that only Officer Grizzle and Officer Yates had access to it. (Tr. 19–25). And finally, that one Jane Bates transported the substance to the State Crime Laboratory at McAlester on the 15th day of December, 1976. (Tr. 29–29).

The possibility for abuse or tampering that was present in *Faulkenberry, supra*, is simply not present in this case. Lapse of time is not prejudicial *per se* and doubt arises only if the passage of time is unexplained and suspicious. See *Contu v. State*, Okl.Cr., 533 P.2d 1000 (1975).

We find, therefore, that there was sufficient evidence in the chain of custody to justify the court admitting the evidence for the jury's consideration.

Finding no error which would cause this Court to either reverse or modify the judgment and sentence, we find that same should be, and hereby is *AFFIRMED*.

CORNISH and BRETT, JJ., concur.