STATE OF NEBRASKA, APPELLEE, V. GARY APKER,
APPELLANT.

284 N. W. 2d 14

Filed October 2, 1979. No. 42534.

Anthony S. Troia of Troia Law Offices, P.C., for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

On November 14, 1978, defendant was tried to a jury and convicted of the felony offense of unlawful possession of a controlled substance with intent to deliver the same. The offense had occurred on July 17, 1978. Defendant was sentenced to a term of 2 years probation and as a part of that probation was ordered to serve 30 days in the county jail. On appeal he objects only to the fact that certain evidence essential to his conviction, some plastic baggies containing the controlled substance, were received in evidence without the State having established a proper foundation through tracing of a complete chain of custody. We affirm.

In State v. Allen, 183 Neb. 831, 164 N. W. 2d 662 (1969), after stating "The trial court's determination of the admissibility of demonstrative evidence will not be overturned except for a clear abuse of discretion," we went on to lay down the general rule governing the necessary foundation for evidence which has been in the possession of law enforcement officers: "We hold that an exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. It must also be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. As long as the article can be identified it is immaterial in how many or in whose hands it has been." In State v. Langer, 192 Neb. 525, 222 N. W. 2d 820 (1974), we said: "Important in such situations are the nature of the exhibit, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with the object."

Captain Wintle, deputy sheriff of Douglas County, testified that he, together with Captain Dempsey and others from both the sheriff's office and the Omaha police department, served a search warrant at the home of the defendant. In that connection he seized, together with other items, exhibits 8 and 10, each being small plastic baggies containing a yellow powder found respectively on the kitchen table and in the pocket of a vest lying on the kitchen counter. He marked the exhibits with his initials and kept them with the other items until he took them to the sheriff's property office. There he placed them all in a property division plastic bag marked with SR number A 14549 and gave them to the property officer. This occurred during the early morning hours of July 18, 1978. Generally, according to his testimony, the property officer secures all property thus received, the room is kept guarded at all times, and no property is permitted to leave the room without being logged out. On November 9, 1978, Wintle logged the exhibits out, transported them to Lutheran Hospital to the chemist, William Ihm, then returned them to the property room and logged them back in where they remained until checked out by this witness the day of the trial. Officer Wintle further stated that when taken to the hospital the exhibits were in the larger bag into which he originally placed them, and they were in this same bag when he picked them up the day of the trial. Finally, he stated the exhibits at the time of trial, to the best of his knowledge, were in substantially the same condition as they were when he took them out of the defendant's residence on July 17.

Captain Dempsey stated he had seen the two exhibits when Captain Wintle seized them in the kitchen. Early the following morning, after they had been logged in at the property room, he and the officer in charge, Deputy Lang, logged the exhibits out and took them to Lutheran Hospital where samples

were taken by the chemist. He was present when the samples were taken and had helped carry them to and from the hospital. He said the exhibits were in a large cardboard box but were all marked in individual packets, and when brought over to court the day of the trial were in a larger cardboard box. Also, he testified that in his 8½ years experience in the sheriff's office he knew of no cases where items of evidence had been intermingled.

After qualifying as a certified chemist, William Ihm related how Dempsey had brought the exhibits to him on July 18, that he gave them a lab number of 789, and that his report showed the SR number of A 14549. He identified the exhibits in court by his lab number and also some exhibit numbers that he placed on the items he tested, and stated that the exhibits were the same ones he tested. He didn't remember whether they were all in a box or a sack. He also related he again tested these same exhibits on November 9 when brought to him by a sheriff's deputy and they were in the same condition as when he sent them back on July 18. His analysis on both occasions revealed that exhibits 8 and 10 contained methamphetamine, which findings were not challenged.

In summary, we come to the conclusion that the record reflects a continuous chain of custody of the substances from the confiscating officer, Captain Wintle, to the sheriff's property officer in whose custody they remained in a guarded property room. Of course, they were removed and taken to the chemist on two occasions, returned, and finally brought to court, all as explained by competent witnesses in great detail. However, the chain of custody remained inviolate. Whether the individual baggies were stored and transported in a larger plastic bag or in a cardboard box, which discrepancy in testimony is the main basis for defendant's complaint, is of no consequence. The individual exhibits were

identified at all stages as the controlled substances removed from the defendant's house, with no substantial change having taken place in their condition, and the method of storing and safeguarding described eliminated all reasonable likelihood of intermeddlers having tampered with their contents. Although there is no requirement that the exhibits be stored in sealed containers or that any particular method of identifying markings be utilized, we are inclined to agree with the trial judge's comments that it was "right on the ragged edge of getting pitched. But I think you may have groped around and got enough in." The method of marking for identification left something to be desired. Certainly, however, it does not approach the situation in State v. Bobo, 198 Neb. 551, 253 N. W. 2d 857 (1977), relied on by the defendant, where the witness obtained one bag containing a controlled substance from the defendant and one from another person, put them both in one pocket, and was never able to identify which bag came from the defendant. The situation here is more akin to that found in State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321 (1967), wherein Smith, J., said: "Although the precautions taken by the sheriff win no plaudits, reception of the exhibits in evidence was not a clear abuse of discretion." The same conclusion is compelled in this case and the defendant's assignment of error is without merit.

The judgment of the trial court is affirmed.

AFFIRMED.