STATE OF WEST VIRGINIA

*v.*

GREG DAVIS

(No. 13997)

Decided May 29, 1980.

784

*Orville L. Hardman* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for defendant in error.

McGraw, Justice

The appellant, Greg Davis, was convicted in the Circuit Court of Wood County for delivery of a controlled substance (marihuana) in violation of W.Va. Code §60A-4-401.[1] He appeals to this Court, alleging that the State failed to lay a proper foundation for admission of the marihuana into evidence against him.

The evidence in the case discloses the following sequence of events. During the late evening hours of October 17, 1975, one Bert Greg Foutty, an informant for the Wood County Sheriff's Department, went to an establish-

---

[1] W.Va. Code § 60A-4-401 reads in pertinent part:

(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

(1) Any person who violates this section with respect to:

\* \* \*

(ii) Any [nonnarcotic drug] classified in Schedule I, II, or III, is guilty of a felony and upon conviction may be imprisoned in the penitentiary for not less than one year nor more than five years, or fined not more than fifteen thousand dollars, or both.

ment known as "The Wheel Club" in Parkersburg for the purpose of purchasing marihuana from the defendant. Foutty testified that after making arrangements, he gave fifty dollars ($50.00) to a Shirley Simmons. He then observed Ms. Simmons giving money to Davis, at which time Davis gave her a brown paper bag. This paper bag was then handed to Foutty, Upon inspection, he found the paper sack to contain four clear plastic bags containing a "greenish, brownish" leafy substance.

Immediately afterwards, Foutty left the Wheel Club and went to the residence of Wood County Deputy Greg Chapman. There, observed by Foutty, Deputy Chapman placed initialed evidence tags on the four plastic bags. After tagging each of the bags, Deputy Chapman took them to the Wood County Correctional Center and placed them in the evidence locker there.

The bags remained in the evidence locker until December 31, 1975, at which time Deputy Chapman removed them and sent them to the State Criminal Investigation Bureau in South Charleston for chemical analysis.

The bags arrived at the laboratory in South Charleston on January 7, 1976, where they were received and marked by Lieutenant Raymond Barber of the State Police. Lieutenant Barber conducted various tests which revealed the substance contained in the four bags to be marihuana. After completion of the tests, Lieutenant Barber resealed the bags, placed them in a sealed mailing envelope, and mailed the parcel back to Wood County, via certified mail.

On April 28, 1976, the parcel was picked up at the Parkersburg post office by now Deputy Foutty, who then returned it to the evidence locker.

Each of the three witnesses, Foutty, Chapman, and Barber identified the four bags at trial by means of evidence tags and marks which they had placed on them. Foutty testified that the bags were in the same condition as when he received them at the Wheel Club.

There appears to be no defect in the chain of custody from the time the contraband was first seized, through analysis, until the placing of the bags in the evidence locker in April of 1976. The defendant contends, however, that the foundation for admission of the marihuana is defective in that "on April 28, 1976, when Foutty put the exhibits in the evidence locker in the Wood County Court House, until the trial November 8, 1976, no chain of possession was established and no effort was made to establish a chain of possession and no one disclosed who brought the exhibits to the Court Room and from whence they came."[2]

An examination of the record in the case convinces us that even though the chain of custody established by the State may not be perfect, it is sufficient to justify admission of the exhibits into evidence.

To allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period,[3] nor is it necessary that every possibility of tampering be eliminated[4]; it is only necessary that the trial judge, in his

---

[2] Brief for Apellant, at page 7.

[3] *See, e.g., United States v. Jones*, 486 F.2d 476 (8th Cir. 1973); *People v. Cornelius*, 585 P.2d 295 (Colo. Ct. App. 1978); *State v. Brown*, 163 Conn. 52, 301 A.2d 547 (1972); *People v. Vance*, 74 Ill. App. 3d 446, 393 N.E.2d 91 (1979); *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979); *State v. Francis*, 345 So.2d 1120 (La. 1977), *cert. denied* 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177; *State v. Wagner*, 587 S.W.2d 299 (Mo. App. 1979); *State v. Snider*, 168 Mont. 220, 541 P.2d 1204 (1975); *Atkins v. State*, 572 P.2d 1298 (Okl. Cr. 1977); *State v. Simpson*, 22 Wash. App. 572, 590 P.2d 1276 (1979).

[4] *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d 81 (1961); *see also United States v. Gutierrez*, 576 F.2d 269 (10th Cir. 1978); *United States v. Barnes*, 586 F.2d 1052 (5th Cir. 1978); *United States v. Coades*, 549 F.2d 1303 (9th Cir. 1977); *United States v. Santiago*, 534 F.2d 768 (7th Cir. 1976); *United States v. Campopiano*, 446 F.2d 869 (2d Cir. 1971); *Stunson v. State*, 228 So.2d 294 (Fla. Dist. Ct. App. 1969); *Blount v. State*, 143 Ga. App. 845, 846, 240

discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Munnerlyn v. State*, 576 S.W.2d 714 (Ark. 1979).[5]

In the case at bar, there was an especially acute problem with laying a proper foundation for admission of the evidence because of the very nature of the exhibits involved. There is obvious difficulty in identifying a fungible exhibit such as marihuana, when contrasted with a readily identifiable, physically distinct article, such as a gun or a photograph. *State v. Lunsford*, 204 N.W.2d 613 (Iowa 1973); *Jones v. State*, 260 Ind. 463, 296 N.E.2d 407 (1973). This is one of the variables which must be considered when the trial court weighs the evidence to determine whether a sufficient chain of custody has been laid to warrant admissibility of the particular type of evidence involved.

Before a physical object connected with the commission of a crime may properly be admitted in evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d

---

S.E.2d 216, 217 (1977); *People v. Schulz*, 1 Ill. App. 3d 212, 273 N.E.2d 736 (1971); *Jones v. State*, 260 Ind. 463, 296 N.E.2d 407 (1973); *Atkins v. State*, 572 P.2d 1298 (Okl. Cr. 1977); *LeBeau v. State*, 589 P.2d 1292 (Wyo. 1979).

[5] On the standard of "reasonable probability," generally, *see United States v. Lane*, 591 F.2d 961 (D.C. Cir. 1979); *United States v. Luna*, 585 F.2d 1 (1st Cir. 1978); *Brewer v. United States*, 353 F.2d 260 (8th Cir. 1965); *State v. Brown*, 163 Conn. 52, 301 A.2d 547 (1972); *State v. Lange*, 255 N.W.2d 59 (N.D. 1977); *State v. Roddy*, 401 A.2d 23 (R.I. 1979).

There are occasional cases which use a differently phrased standard, *e.g., United States v. Jones*, 404 F.Supp. 529 (E.D. Pa. 1975) (wherein the language "reasonable certainty" is used), but we believe the proper burden of proof for admission to be the traditionally phrased standard: "reasonable probability that the evidence is in substantially the same condition as when the crime was committed."

In the words of the Supreme Court of Indiana, "[W]e are not here concerned with absolute certainty but with probabilities." *Jones v. State*, 260 Ind. 463, 296 N.E.2d 407 (1973).

81 (1961).[6] Factors to be considered in making this determination are (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it. If, upon consideration of these factors, the trial judge is satisfied that in reasonable probability the article has not been changed in important respect, he may permit its introduction into evidence. *Brewer v. United States*, 353 F.2d 260 (8th Cir. 1965).[7]

In this case, we deal with a fungible exhibit requiring a fairly extensive foundation, but at the same time we see an efficient and uncontroverted chain of custody through the final custodian of the exhibit,[8] and we see no evidence, nor even a legitimate claim, that the exhibits have been tampered with. Importantly, the chain of custody was clearly established through the point at which the exhibits were subjected to chemical analysis. In a prosecution for a drug-related offense, where guilt is primarily dependent upon proof that the substance involved is in fact what it is alleged to be, the chain of custody will ordinarily be sufficient if it traces the path of the exhibit through analysis.[9]

---

[6] *See also, United States v. Lane*, 591 F.2d 961 (D.C. Cir. 1979); *United States v. Santiago*, 534 F.2d 768 (7th Cir. 1976); *State v. Roddy*, 401 A.2d 23 (R.I. 1979). *Compare State v. Hagan*, 598 P.2d 550 (Kan. App. 1979) (wherein court phrases standard in terms of proving "freedom from material alteration").

[7] The enunciation of the three-factor test in *Brewer* has been adopted verbatim in a number of other jurisdictions. *See, e.g., United States v. Jones*, 486 F.2d 476 (8th Cir. 1973); *State v. Brown*, 163 Conn. 52, 301 A.2d 547 (1972); *State v. Langlet*, 283 N.W.2d 330 (Iowa, 1979); *State v. Apker*, 204 Neb. 577, 284 N.W.2d 14 (1979).

[8] "When an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence." Syl. pt. 2, *State v. Charlot*, 157 W.Va. 994, 206 S.E.2d 908 (1974); *See also Cannellas v. McKenzie*, ___W.Va.___, 236 S.E.2d 327 (1977).

[9] This position was implied by our holding in *State v. Johnson*, 157 W.Va. 341, 201 S.E.2d 309 (1973), embodied in Syl. pt. 5 thereof:

While it is true that the preferred course is to establish a complete chain of evidence through the point at which the article is brought into the courtroom, such perfection is not an absolute requirement. Though there was no specific showing that the evidence was secure from meddling during the six month period between analysis and trial, this is not in itself a fatal flaw. The mere possibility or speculation that evidence could have been tampered with does not constitute sufficient ground for exclusion. *Le Beau v. State*, 589 P.2d 1292 (Wyo. 1979).[10]

A different case may have been presented had tangible deficiencies or potential improprieties been developed at trial. The record discloses at least the possibility of problems with the weight of the marijuana purchased, and with the loss or destruction of the paper sack in which the four plastic bags were originally packaged. It might also have been possible to raise the spectre of tampering during the long periods of time which the exhibits remained in the evidence locker at the sheriff's office. However, none of these areas were developed

---

"Although the State is required to prove a proper chain of custody of a contraband substance up to the point where it is analyzed by the State's expert, it is not necessary for the State to exclude every hypothetical source of confusion when a theory of such confusion was not advanced at trial in a timely fashion and facts were not presented in support of such theory."

The same approach has been followed elsewhere. *See, e.g., United States v. Campopiano*, 446 F.2d 869 (2d Cir. 1971); *Owens v. State*, 291 Ala. 107, 278 So.2d 693 (1973); *Jones v. State*, 339 So.2d 1042 (Ala. Ct. App. 1976); *Blount v. State*, 143 Ga. App. 845, 846, 240 S.E.2d 216, 217 (1977); *Schwartz v. State*, 379 N.E.2d 480 (Ind. App. 1978); *State v. Lunsford*, 204 N.W.2d 613 (Iowa 1973); *State v. White*, 213 Kan. 276, 515 P.2d 1081 (1973).

Of particular interest in the context of this case are the two cases of *People v. Vance*, 74 Ill. Ap.3d 446, 393 N.E.2d 91 (1979), and *State v. Francis*, 345 So.2d 1120 (La. 1977), *cert. denied*, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177. In each of these cases, contraband substance was held to be admissible once a chain was established to the point of analysis, even though the whereabouts of the exhibits were unaccounted for during the period between analysis and trial.

[10] For other cases, *see* note 4, *supra*.

to any extent, and so it would be pure conjecture for this Court to reverse the judgment of the circuit court on such grounds.

It is this Court's duty in reviewing the judgment of lower courts to fully consider every point fairly arising upon the record in the case, W. Va. Const. art. 8, § 4, but it is also our duty to respect the wisdom and propriety of the lower court's proceedings, and we are not free to invent issues, or to speculate as to what might have been the case on a more fully developed body of evidence.

On the record before us, there seems to be no legitimate doubt that the exhibits tendered were genuine and free from tampering or material alteration. Their authenticity was insured at trial based upon evidence tags and markings which had been placed upon them by the witnesses.[11]

The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. *State v. Michael*, 141 W.Va. 1, 87 S.E.2d 595 (1955). Absent abuse of discretion, that decision will not be disturbed on appeal. *United States v. Luna*, 585 F.2d 1 (1st Cir. 1978).[12] We are unable to say that the ruling of the trial court here constituted an abuse.

As a final matter, the appellant complains that the testimony of the State's expert, Lieutenant Barber, was

---

[11] The validity of identification by markings, such as initials, or by evidence tags, in the context of a controlled substance has been recognized elsewhere. *See, e.g., United States v. Christopher*, 488 F.2d 849 (9th Cir. 1973); *United States v. MacDonald*, 455 F.2d 1259 (1st Cir. 1972); *Jones v. State*, 339 So.2d 1042 (Ala. Ct. App. 1976); *Fight v. State*, 254 Ark. 927, 497 S.W.2d 262 (1973); *State v. Snider*, 168 Mont. 220, 541 P.2d 1204 (1975).

[12] *See also United States v. Jones*, 486 F.2d 476 (8th Cir. 1973); *State v. Brown*, 163 Conn. 52, 301 A.2d 547 (1972); *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979); *Nix v. State*, 276 So.2d 652 (Miss. 1973); *State v. Wagner*, 587 S.W.2d 299 (Mo. App. 1979); *State v. Apker*, 204 Neb. 577, 284 N.W.2d 14 (1979); *State v. Lange*, 255 N.W.2d 59 (N.D. 1977).

insufficient to prove that the material seized was in fact "marihuana" under the statutory definition.[13] Upon examination of Lieutenant Barber's testimony, we find this contention to be without merit. As in the case of *State v. Knight*, \_\_\_W.Va.\_\_\_, 230 S.E.2d 732 (1976), "[even] though the chemist admitted that he performed no germination test on the seeds, his testimony regarding the leaf fragments did bring the substance clearly within the statutory prohibition." *Id.*, 230 S.E.2d 737. *Accord Patterson v. State*, 138 Ga. App. 290, 226 S.E.2d 115 (1976); *People v. Schulz*, 1 Ill. App. 3d 212, 273 N.E.2d 736 (1971).

Accordingly, the judgment of the Circuit Court of Wood County is hereby affirmed.

*Affirmed.*

---

[13] W.Va. Code § 60A-1-101, subsection (n), reads as follows:

(n) "Marihuana" means all parts of the plant "cannabis Sativa L.," whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.