# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0511** (Fayette County 19-F-6)

**Kenneth A. Batey Jr.,**
**Defendant Below, Petitioner**

**FILED**
**June 18, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kenneth A. Batey Jr., by counsel Evan J. Dove, appeals the Circuit Court of Fayette County's May 2, 2019, sentencing order following his convictions for two counts of attempted second-degree murder and two counts of wanton endangerment. Respondent State of West Virginia, by counsel Scott E. Johnson, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 4, 2018, Ralph and Melanie Nady were driving in Oak Hill, West Virginia, when they saw an individual—later identified as petitioner—make an obscene hand gesture involving his middle finger at them. Mr. Nady turned his car around in a driveway "to see what his problem was" when petitioner shot at them. Mr. Nady, while still driving, pursued petitioner and observed him run into a gambling establishment. Detective Sergeant James R. Pack, of the Oak Hill Police Department, was one of the officers who responded to a call reporting that shots had been fired. Detective Pack arrested petitioner and retrieved a firearm from the establishment.

Petitioner was indicted on two counts of attempted murder and two counts of wanton endangerment involving a firearm on January 8, 2019. On February 26, 2019, the parties appeared for a motions hearing, at which petitioner argued a previously filed motion to continue. Petitioner explained that a continuance was necessary because he was "in the process of obtaining medical records from two medical institutions [in] Greensboro, North Carolina." Petitioner stated that he intended to raise "a defense of deadly force, with deadly force[, and] [w]e are trying to determine the mental state of the defendant, as it relates to said defensive

1

law."[1] Petitioner represented that he was previously shot and, as a result of that shooting, diagnosed with post-traumatic stress disorder. Petitioner also stated that he had "obtained and [was] preparing to present to the State an expert witness from [the] National Rifle Association [("NRA")] who is a concealed weapons and defensive handgun specialist." Petitioner stated that his handgun was "used in a defensive handgun situation" and that he "would like to present expert testimony from an individual who is trained both in defensive handguns, instructs said individuals and his court materials excepted [sic] by the law enforcement agencies of this county."

The circuit court declined to permit petitioner to call the specialist from the NRA, reasoning that

> [i]f [petitioner] has a self-defense argument, he can argue it to the jury. I don't need a NRA expert coming in here and (inaudible) that he acted in self-defense or whatever. That would be the only reason to use him. Otherwise he's not—can't give testimony or evidence that is relevant to the material—elements to this defense.

The court also denied petitioner's motion to continue, finding that he had "had adequate time to find any medical records that might be available, in this case."

Petitioner's trial began on March 14, 2019. The State called, among other witnesses, Phillip Cochran, a firearm and tool mark examiner employed by the West Virginia State Police Forensic Laboratory ("Crime Lab"). Petitioner objected to his testimony on the ground that the State had not disclosed Mr. Cochran as a trial witness. The State indicated that it had submitted Mr. Cochran's report to petitioner as soon as the State received it, which was on approximately March 5, 2019. Finding that Mr. Cochran's report was on the State's exhibit list, that petitioner was aware of his report, and that Mr. Cochran's anticipated testimony "will not come as any surprise to you," the court overruled petitioner's objection.

After the case was submitted to the jury and it had begun its deliberations, the jury delivered a note to the court asking for the definition of "malice" and for the difference between second-degree murder and involuntary manslaughter. The court instructed the jury that involuntary manslaughter was not an option, and it gave the jury a copy of its instruction defining malice and differentiating between second-degree murder and voluntary manslaughter.

After reaching their verdict, the jurors returned to the courtroom. The court read the jury's verdict for Count I—guilty of attempted voluntary manslaughter—when the jurors began

---

[1] Petitioner contended that, before he shot at the Nadys, he saw Mr. Nady holding a weapon inside his car. Mr. Nady, in fact, had a pellet gun in the car.

speaking out about the verdict.[2] The court returned the verdict form to the jury, the jury resumed deliberations, and then the jury returned to the courtroom with its corrected verdict form. Petitioner was found guilty of the attempted second-degree murder of both Mr. Nady and Ms. Nady, as well as guilty of wanton endangerment involving a firearm as to both Mr. and Ms. Nady. The jury was polled, and each member confirmed that this was their verdict.

On May 2, 2019, the court entered its sentencing and commitment order sentencing petitioner to not less than one nor more than three years of incarceration for each attempted second-degree murder conviction and to determinate five-year terms of incarceration for each wanton endangerment involving a firearm conviction. It further ordered that these sentences run consecutively to one another. This appeal followed.

On appeal, petitioner raises five assignments of error. First, he argues that the circuit court erred in denying his motion to continue trial to afford him time to obtain his medical records. In support, petitioner relies on *State v. Milam*, 159 W. Va. 691, 226 S.E.2d 433 (1976), where this Court reiterated "that it is an abuse of discretion to refuse a continuance to allow a defendant to obtain evidence which is critical to his defense, the existence of which was discovered only shortly before trial." *Id.* at 700, 226 S.E.2d at 440 (citation omitted).

As intimated from the portion of *Milam* quoted above, we review a court's denial of a motion to continue for an abuse of discretion: "In a criminal case, the granting or denial of a motion for continuance rests in the sound discretion of the trial court and the refusal to grant such continuance constitutes reversible error only where the discretion is abused." *Id.* at 691, 226 S.E.2d at 436, syl. pt. 4. In *Milam*, in moving for a continuance, "[c]ounsel advised the court that on the night before trial, during a conversation with the defendant, he had discovered that the defendant had received protracted institutional psychiatric care at a facility in Buffalo, New York." *Id.* at 695, 226 S.E.2d at 437. We observed that this night-before-trial discovery was apparently the first time counsel became aware of the treatment. *Id.* The trial court and counsel contacted the psychiatric institution, which confirmed that the defendant had received care for three years; however, the institution refused to provide specific information without proper authorization. *Id.* The trial court declined to grant a continuance to obtain records, which we found to be in error. *Id.* at 700-01, 226 S.E.2d at 440-41.

In his brief on appeal, petitioner acknowledges that he had "more than a month to obtain" the desired medical records before moving for a continuance, and we further note that another two weeks passed between the pretrial hearing and trial during which petitioner could have obtained the records. Petitioner did not argue to the circuit court that this was an insufficient amount of time within which to gather the sought-after records, nor did he claim that the

---

[2] After the court read "guilty of attempted voluntary manslaughter," petitioner's trial transcript documents only that "(Jurors speak out about the reading of verdict)." No specifics are given. After the jurors spoke out, the court said, "I'm going to send you back to the jury room and go over the verdict form and make sure it's what all twelve of [you] have agreed on."

treatment providers needed additional time to comply with a request for records.[3] Moreover, there was no eve-of-trial discovery on petitioner's part, nor has petitioner argued that the existence of these medical records became known only shortly before trial. As a result, *Milam* does not compel a finding, nor do we find, that the court abused its discretion in denying petitioner a continuance.

In petitioner's second assignment of error, he argues that the circuit court should have allowed him to call the NRA expert in support of his self-defense claim to explain the nature of defensive handgun scenarios and how people react in those situations. Petitioner asserts that the court's ruling precluding that testimony prejudiced his defense at trial, leaving him with only "his own lay person's perspective of defensive handgun situations."

When a circuit court excludes the testimony of an expert witness, we review for an abuse of discretion. *State v. McKinley*, 234 W. Va. 143, 162, 764 S.E.2d 303, 322 (2014). Under Rule 702(a) of the West Virginia Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The "essence" of this Rule "is that of 'assisting' the factfinder's comprehension through expert testimony." *Sheely v. Pinion*, 200 W. Va. 472, 478, 490 S.E.2d 291, 297 (1997) (citing *Tanner v. Rite Aid of W. Va., Inc.*, 194 W. Va. 643, 654 n.17, 461 S.E.2d 149, 160 n.17 (1995) ("Helpfulness to the jury . . . is the touchstone of Rule 702.")). Thus, a corollary to the Rule is that "[e]xpert opinion evidence concerning a matter as to which the jury are as competent to form an accurate opinion as the witness, is inadmissible." Syl. Pt. 2, *State v. Mitter*, 168 W. Va. 531, 285 S.E.2d 376 (1981) (citation omitted).

Concerning self-defense, we have stated, generally, that

> a defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself.

*State v. W.J.B.*, 166 W. Va. 602, 606, 276 S.E.2d 550, 553 (1981) (citation omitted). The question of whether a defendant acted in self-defense is within the jury's province. *State v. Whittaker*, 221 W. Va. 117, 127, 650 S.E.2d 216, 226 (2007).

We find that the circuit court did not abuse its discretion in excluding the NRA specialist's testimony. Petitioner argues that, without the testimony, he was left with only "his own lay person's perspective of defensive handgun situations," but this argument fails to explain how the jury's comprehension would have been assisted by the specialist's testimony. We find, instead, that the jury was as competent as the NRA specialist to form an opinion regarding

---

[3] In fact, petitioner offered no reason for why he needed additional time to gather records.

whether petitioner reasonably believed he was in imminent danger of death or serious bodily harm in his interaction with the Nadys. Further, the jury was the proper body to make this determination; accordingly, the proposed testimony was inadmissible.

Next, petitioner argues that the circuit court erred in allowing Mr. Cochran to testify when he was not disclosed prior to the day of trial. Petitioner states that Mr. Cochran was a vital witness through whom "virtually all of the physical evidence" against petitioner was admitted and that the court's decision to allow Mr. Cochran to testify prejudiced his defense and was a violation of Rule 16 of the West Virginia Rules of Criminal Procedure.

Courts are vested with "broad latitude" in selecting a remedy for a violation of Rule 16 of the West Virginia Rules of Criminal Procedure, governing discovery. *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 140, 454 S.E.2d 427, 434 (1994). And "[t]he scope of appellate review must necessarily be an abuse of discretion standard." *Id.* In determining whether a violation of Rule 16 prejudiced a defendant, we employ a two-pronged analysis: "(1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." *Id.* at 135, 454 S.E.2d at 429, syl. pt. 2, in part.

The court admitted Mr. Cochran's testimony after noting that petitioner was aware of Mr. Cochran's report and, therefore, would not be surprised by his testimony. Petitioner does not dispute this finding. Although he states in conclusory fashion that the court's decision "highly prejudiced" his defense, he provides no explanation or argument to support his assertion, nor does he claim that the preparation or presentation of his case was hampered in any way. Accordingly, he has demonstrated no error in the court's decision to permit Mr. Cochran's testimony, and we find none.

In petitioner's fourth assignment of error, he argues that the State failed to establish a proper chain of custody for nine pieces of evidence admitted against him. This evidence included petitioner's handgun, the magazine for the gun, one fired bullet, and six fired cartridge cases. Petitioner states that Mr. Cochran, through whom these pieces of evidence were admitted, "could not account for how many people had been in possession of the [evidence] before trial." Likewise, according to petitioner, Mason Hines, a forensic investigator with the Oak Hill Police Department, could not account for how many people possessed this evidence at different points prior to trial.

> Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it.

Syl. Pt. 1, *State v. Davis*, 164 W. Va. 783, 266 S.E.2d 909 (1980). "The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal." *Id.* at 784, 266 S.E.2d at 910, syl. pt. 2.

5

We have also stated that

> [t]o allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period, nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with.

*Id.* at 786-87, 266 S.E.2d at 911-12 (internal footnotes and citation omitted). Indeed, "[t]he mere possibility or speculation that evidence could have been tampered with does not constitute sufficient ground for exclusion." *Id.* at 789, 266 S.E.2d at 913 (citation omitted). In instances

> [w]hen an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence.

Syl. Pt. 8, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017) (citation omitted). But "[w]hen the proponent authenticates evidence by tracing a chain of custody, the mere possibility of a break in that chain does not render the item inadmissible, but is an issue for the jury to consider in determining the sufficiency of the proof." *Id.* at 436, 796 S.E.2d at 223 (citation omitted).

In the portion of the appendix record cited by petitioner to support his arguments relative to Mr. Cochran, Mr. Cochran detailed the extensive protocols employed by the Crime Lab to maintain a proper chain of custody. Petitioner's counsel asked specifically, "Did you all keep [an] accurate record of who had access to all those materials, at all times, twenty-four hours a day?" Mr. Cochran answered, "Yes. We maintain a chain of custody for those items." Counsel also asked, "Can you guarantee that there were no other persons beyond the custodian and you while it was in the building?" Mr. Cochran responded,

> Well, I mean, the laboratory has controlled access. So, the only people to have access to the vault area and the central evidence receiving area are the people that work for central evidence receiving. The only people that have access to our section in the laboratory are people that have a security pass for our section.
>
> So, the only people that have access to those areas are the people who have security access to gain access to those areas.

It is unclear how the cited portions of Mr. Cochran's testimony amount to an affirmative representation that he was unable to "account for how many people had been in possession of the [evidence] prior to trial." But, in any event, "[t]he mere possibility or speculation that evidence

could have been tampered with does not constitute sufficient ground for exclusion." *Davis*, 164 W. Va. at 789, 266 S.E.2d at 913 (citation omitted).

During Mr. Hines's testimony, petitioner's counsel asked, "Do you have a knowledge or perhaps have a record of who had access to [the evidence] at the State Police [Crime] Lab or is that out of your control." Mr. Hines said, "No, I do not." As for who had access to the evidence at the Oak Hill Police Department, however, Mr. Hines testified that only he and one other officer, a lieutenant, had access. The evidence is secured by an electronic lock, which is opened with a key fob. Mr. Hines testified that the key fob is on his person at all times, he takes it home with him, and he has never lost it. Again, the testimony identified by petitioner provides nothing more than the "mere possibility or speculation that evidence could have been tampered with," which is not a sufficient ground for exclusion.

In *Boyd*, we rejected a challenge similar to that raised by petitioner:

Mr. Wyche contends that the State's witness at trial could not give assurances as to . . . whether [the sample] could have been tainted; therefore, the evidence should not have been admitted. We reject this. "When the proponent authenticates evidence by tracing a chain of custody, the mere possibility of a break in that chain does not render the item inadmissible, but is an issue for the jury to consider in determining the sufficiency of the proof."

*Id.* at 436, 796 S.E.2d at 223 (citation omitted). Additionally, petitioner has not alleged that the evidence was not genuine or that it had been tampered with in any manner. *See State v. McCartney*, 228 W. Va. 315, 719 S.E.2d 785 (2011) (finding no abuse of discretion in the court's ruling admitting the gun into evidence where the firearms examiner identified the gun as that received and tested by his office, he identified his initials on the gun evidencing receipt at the firearms lab, and petitioner did not "allege or point to any evidence in the record to show that the weapon introduced into evidence was not genuine or had been tampered with in any manner"). Accordingly, we find no abuse of the circuit court's discretion in its chain of custody determination.

In petitioner's final assignment of error, he argues that the circuit court's instruction on attempted voluntary manslaughter was confusing.[4] He claims that the jury's request for the

---

[4] Petitioner also asserts, in passing, that the circuit court's instruction on attempted second-degree murder was confusing, but he offers no argument in support; his arguments in support of this assignment of error pertain only to the attempted voluntary manslaughter instruction. "[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (citation omitted). Moreover, a review of the appendix record reveals that petitioner did not object to the court's attempted second-degree murder instruction.

(continued . . .)

definition of malice and the difference between second-degree murder and involuntary manslaughter evidenced confusion on the jury's part, as did the issue with their initial verdict.

Like petitioner's other assignments of error, we review this claimed error for an abuse of the circuit court's discretion: "When called upon to review a trial court's rejection or acceptance of a specific jury instruction, this Court generally applies an abuse of discretion standard." *State v. McGuire*, 200 W. Va. 823, 828, 490 S.E.2d 912, 917 (1997) (citation omitted). Also,

> [i]n reviewing the adequacy of a trial court's choice and selection of jury instructions, we accord the trial court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law. Furthermore, the trial court has broad discretion in determining the wording of the jury instructions. As long as the jury instructions given by the trial court adequately and accurately cover the substance of the requested instructions, there is no abuse.

*State v. Derr*, 192 W. Va. 165, 179, 451 S.E.2d 731, 745 (1994) (citation omitted).

Here, the jury's questions centered on the malice instruction, to which petitioner did not object, and involuntary manslaughter, on which the court did not instruct. Petitioner fails to explain how these questions indicate that the attempted voluntary manslaughter instruction was confusing. Likewise, petitioner offers no explanation as to how the jury foreperson's mistake in completing the verdict form signals confusion regarding the instruction given. In fact, aside from arguing, in essence, that the instruction was presumptively confusing because the jury had questions about unrelated instructions and incorrectly completed the verdict form—a mistake the jury immediately caught and corrected—petitioner offers no analysis of the challenged instruction, nor does he quote it or identify the purportedly confusing elements. As a result, petitioner has failed to demonstrate an abuse of the court's discretion in giving the attempted voluntary manslaughter instruction.

For the foregoing reasons, we affirm.

Affirmed.

---

> When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). For this additional reason, we decline to consider petitioner's claim concerning the attempted second-degree murder instruction.

**ISSUED:** June 18, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

9