# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jeffrey L. Finley,**
**Petitioner Below, Petitioner**

**FILED**

**June 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0084**  (Cabell County 10-C-842)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jeffrey L. Finley, by counsel Eric Anderson, appeals the Circuit Court of Cabell County's December 29, 2016, order that denied his petition for a writ of habeas corpus. Respondent Ralph Terry, Acting Warden, Mt. Olive Correctional Complex, by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 22, 1999, petitioner's neighbor, ninety-two-year-old Mabel Hetzer, was found dead in her home. The investigating officers noticed the victim's body to be lying in an unnatural position on her bed. They also found a suspected bite mark on her body and injuries that could have been caused by a sexual assault. It was subsequently determined that the victim was sexually assaulted both vaginally and anally, that her back was broken, and that she was strangled to death.

The investigation into the victim's death ceased during the summer of that same year. The swabs taken from the victim's body were not processed and no efforts were made to determine if any of the DNA material recovered matched any person. Two and a half years later, a new supervisor at the Huntington Police Department ordered that the investigation into the

---

[1]Since the filing of the petition in this case, the warden at Mt. Olive Correctional Complex has changed, and the acting warden is now Ralph Terry. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

victim's death be reopened. Police officials examined a set of bed clothes at the scene with an alternative light source device that was broken during the initial investigation. A number of hairs that had previously gone undetected were discovered.

Meanwhile, during this two-and-a-half-year period, petitioner moved to Wisconsin to live with his sister and find employment. On March 21, 2002, after providing an affidavit to authorities in Wisconsin, Huntington Police officers questioned petitioner and obtained DNA samples from him. One of the officers, Detective Michael Coffey, transported these samples back to West Virginia and stored petitioner's blood sample in an unlocked, unsecured refrigerator in his home until March 25, 2002, at which time he gave the sample to Forensic Officer David Castle. Officer Castle transported blood/DNA samples from both petitioner and the victim to the West Virginia State Police Laboratory on April 2, 2002.

Lieutenant H.B. Myers, a forensic scientist employed by the West Virginia State Police received the materials for testing on February 11, 2003. He prepared a report as a result of his testing that indicated that there was dual DNA on the swab provided by the police and that the primary genotypes (female donor) were consistent with the DNA profile of the victim. With regard to the other contributing DNA found on the swab, Lt. Myers opined as follows:

> The secondary genotypes identified from the swab of the bite mark indicated the presence of a male donor based on the amelogenin results. [Petitioner] cannot be excluded as a possible contributor to the mixture of DNA identified from the swab of the bite mark. The combined probability of exclusion for the mixture results obtained from the swab of the bite mark is 99.9999895%. Meaning that approximately 1 in each 9.52 million randomly selected unrelated individuals would be a potential contributor to this mixture.

On May 16, 2003, petitioner was indicted on charges of first degree murder and two counts of second degree sexual assault. The guilt phase of the bifurcated trial commenced on September 20, 2004. Consistent with his written report, Lt. Myers testified at trial that petitioner could not be excluded as a potential donor of the secondary source of the DNA found on the swab taken from the victim's body. Petitioner was convicted of all charges. Upon recommendation by the jury, the circuit court sentenced petitioner to life in prison without the possibility of parole on the murder conviction. The Court also sentenced petitioner to two consecutive terms of ten to twenty-five years for both of the sexual assault convictions.

Petitioner appealed his convictions to this Court. Based upon petitioner's appearance before the jury during the penalty phase, during which he wore identifiable orange prison garb, this Court reversed petitioner's sentence and remanded for a jury to determine the singular issue of whether mercy was to be recommended in sentencing. *See State v. Finley*, 219 W. Va. 747, 639 S.E.2d 839 (2006). In all other respects, petitioner's convictions were affirmed. Petitioner was subsequently resentenced to life, with mercy, on the first degree murder conviction and, as before, sentenced to two terms of ten to twenty-five years on the second-degree sexual assault convictions. The sentences were ordered to be served consecutively.

Petitioner, by counsel, filed an amended petition for a writ of habeas corpus on July 23, 2014. A final omnibus hearing was held on October 28, 2014. By order entered on December 29,

2016, the circuit court denied petitioner's request for habeas relief. This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

First, we address petitioner's argument that the circuit court erred in failing to conclude that petitioner was deprived of his constitutional right to be present at all critical stages of the trial when the trial judge twice communicated off the record with the jury while they were deliberating. *See* U.S. Const. amend VI; W.Va. Const. art. 3, § 14; W.Va. Code § 62-3-2. The first communication occurred after the jury requested, in writing, "a copy of Officer John Franklin's statement." In the presence of petitioner and the attorneys for both parties, the judge read the request and placed it in the record. The judge then advised that he intended to go into the jury room to tell the jury "that they have everything that they can have and they will have to use their best recollection." The judge then asked if there was "any objection to my doing that?" Petitioner's counsel replied in the negative. Again, the judge inquired, "Do I need to bring them out here and put them in the jury box and do that?" Petitioner's counsel reiterated that there was no objection. The judge then asked, "Do I need to take my court reporter in to take down what I say? I'll have the door open. You can listen." Petitioner's counsel replied, "That's fine." The judge proceeded to the jury room to instruct the jury.

The second communication between the judge and the jury occurred later that afternoon and was precipitated by the late hour and the imminent closure of the court house for the day. According to the trial transcript, the judge stated:

> It's 4:40 pm. The normal closing time for the courthouse is 4:30. I intend to go into the jury room and ask them if they're close and want to stay. I would be happy to keep the staff here until about 5:00. But if they don't feel like they are close, I intend to ask them to come back tomorrow and begin their deliberations by 9:00.
>
> **[Defense counsel]:** Yes, sir.
>
>     . . . . .
>
> **The Court:** Any objection to my just going in there?
>
> **[Defense counsel]:** Oh, no, sir.

3

**The Court:** Don't need to bring them out?

**[Defense counsel]:** We don't need a reporter.

**The Court:** We don't need to put it on the record?

**[Defense counsel]:** No. We'll trust your judgment, Your Honor.

The judge then proceeded to the jury room and, after speaking with the jury, reentered the courtroom. He addressed petitioner and the parties' counsel as follows:

> As I mentioned, I informed the jury that 4:30 is the normal time we allow juries to go home. However we do let them stay if they feel like they're close [to reaching a verdict]. Didn't want them to feel any pressure to reach a verdict or not reach a verdict. That certainly they would be able to come back tomorrow and deliberate further if they would like to do that. I would leave that up to them. And all of them indicated that they were in the process of filling out the verdict form and that within a few minutes they thought they would have a unanimous verdict and they could return it on all three counts. And they would prefer to stay if we would all be willing to stay.
>
> I indicated that there was some willingness to stay, but if they changed their minds or had any concerns or wanted to go home and sleep on it that we would be happy to come back and have them deliberate further tomorrow. They said they understood that. But they did ask if we would wait and they said they would let us know when and if they reached a unanimous verdict.

The circuit court then took a recess. At 4:53 p.m., the jury returned to the courtroom and delivered its verdict.

Petitioner argues that both of the foregoing meetings between the judge and jury were critical stages of the proceedings and that he had a constitutional right to be present at each. This Court has held that

> "[t]he defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syllabus point 6, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977).

Syllabus, *State v. Hicks*, 198 W. Va. 656, 482 S.E.2d 641 (1996). Petitioner argues that waiver of such a "fundamental and constitutional right . . . may be accomplished [,but, i]t must be achieved . . . by the defendant himself in the form of a knowing and intelligent waiver." *Id.* at 663, 482 S.E.2d at 648. Furthermore, petitioner argues, the judge did not follow the standards previously established by this Court regarding judicial contact with jurors. In syllabus point three of *State v. Keaton*, 215 W. Va. 376, 599 S.E.2d 799 (2004), we held as follows:

4

The best practices to be followed when a trial judge addresses or converses with a juror or the jury in a criminal proceeding are as follows, unless special circumstances—that should be fully spread upon the record—dictate otherwise: (1) the judge should address or converse with jurors on the record and in the presence of the defendant and his or her counsel unless the defendant personally and affirmatively waives the right to be present; (2) when a trial judge addresses or converses with one or more jurors and the defendant and his or her counsel are not present, the defendant and his or her counsel should be furnished with a prompt oral summary by the trial court and a subsequent transcript of the address or conversation; (3) after the substance or transcript of the address or conversation are made known to the defendant and his or her counsel, any alleged error in or problem with the address or conversation should be promptly presented to the trial court in an appropriate motion—although failure to do so does not *per se* preclude raising any alleged error or problem in the address or conversation on appeal.

Petitioner contends that the foregoing rules were not satisfied in this case because the judge did not converse with the jurors in petitioner's presence or on the record and petitioner did not "personally and affirmatively" waive his right to be present during the judge's communications with the jury. Thus, he argues, he was denied his constitutional right to be present at all critical stages of the proceedings against him.

We find no error. First, although petitioner claims that both instances constituted critical stages of the trial, he fails to explain in what regard. Even if we were to deem them to be critical stages, in both instances, the judge informed petitioner and his counsel as to the purpose of his intended communications with the jury, offered to bring the jury into the courtroom first, and also offered to have a court reporter present to record the communications. In petitioner's presence, his counsel refused the judge's offer to bring the jury into the courtroom or to have the communication recorded. Further, the judge specifically asked petitioner and the parties' counsel if there was any objection to the manner in which he intended to communicate with the jury. Neither party objected. Not only were petitioner and his counsel able to hear the judge's remarks to the jury, but also, after the judge spoke to the jury, he promptly returned to the courtroom where he summarized what transpired. Importantly, petitioner does not claim that he then objected to the substance of the judge's communication with the jury nor does he now argue that the communication unfairly prejudiced his defense. "In a criminal proceeding, the defendant's absence at a critical stage of such proceeding is not reversible error where no possibility of prejudice to the defendant occurs." Syl. Pt. 3, *State ex rel. Redman v. Hedrick*, 185 W. Va. 709, 408 S.E.2d 659 (1991). Based upon these particular facts, therefore, we conclude that the circuit court did not err in finding that petitioner's constitutional right to be present at all critical stages of the trial was not violated.

Next, we address petitioner's argument that the circuit court erred in finding that petitioner received effective assistance of counsel at trial. Petitioner argues that defense counsel was ineffective in failing to have an independent DNA expert retest petitioner's DNA sample against the DNA found on the victim's body and in failing to request that petitioner be present during the two off-the-record communications between the judge and jury. Petitioner also argues

that defense counsel suffered a severe medical illness during the course of trial; that, as a result, the trial was postponed for several days; and that, when the trial resumed, defense counsel "was shaking and hesitating" and unable "to sufficiently defend" petitioner. As a result, petitioner argues, defense counsel was ineffective. We will address each of petitioner's claims in turn.

Our review of defense counsel's performance involves the application of the following two-prong test:

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus point 6, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pts. 3 and 4, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

First, petitioner argues that the State's case against him was based almost entirely on the "weak" DNA evidence from a secondary source found on the victim's body and that independent DNA testing would have shown that this DNA did not match the petitioner's DNA. As a result, petitioner argues, he would have been exonerated. Thus, he contends that defense counsel was ineffective for failing to have the DNA independently tested.

We find no error. The State's DNA expert determined that more than 99.99% of the population could be excluded as contributing to the secondary source of DNA found on the victim's body and that petitioner was not among the population that could be excluded. According to defense counsel's testimony at the omnibus evidentiary hearing, he traveled to North Carolina where he consulted an independent DNA expert regarding this evidence. Counsel testified that the expert determined that the State's DNA expert had done the DNA testing "right" and "saw no problems with [the State's] procedures." Confronted with this information, defense counsel made the tactical decision not to have the DNA independently re-tested due to the possibility that such testing would confirm, rather than contradict, the State's findings, which could then have been used against petitioner at trial. As a reviewing court, we must refrain from engaging in hindsight or second-guessing defense counsel's strategic decision not to subject the DNA samples to independent testing under the circumstances but, instead, must determine

"whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." *Miller*, 194 W.Va. at 6-7, 459 S.E.2d at 117-18, at syl. pt. 6, in part. Indeed, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 3, *State ex rel. Kitchen v. Painter*, 226 W. Va. 278, 700 S.E.2d 489 (2010) (citation omitted). We conclude that defense counsel's strategic decision to refrain from having the DNA samples re-tested was reasonable under the circumstances. Therefore, we find that the circuit court properly determined that defense counsel was not ineffective for electing not to have the DNA sample independently tested.[2]

Petitioner also argues that defense counsel was ineffective for failing to request that petitioner be present during the off-the-record communications between the judge and jury during deliberations, described above. Defense counsel testified at the omnibus hearing that he believed the judge's communications with the jury—refusing their request for a copy of a witness statement and advising them that, due to the late hour, they could stay and deliberate further or return the next morning—were "housekeeping" matters and, as such were not critical. In any event, petitioner does not claim that he was in any way prejudiced by the off-the-record communications. Indeed, we have already determined that no prejudice resulted. Thus, we conclude that the circuit court did not err in finding that defense counsel was not ineffective for failing to request that petitioner be present during the off-the-record communications between the judge and jury.

Finally, petitioner argues that defense counsel was ineffective after he fell ill during the course of the trial. According to petitioner, the proceedings were recessed for several days and, after the trial resumed, defense counsel was "shaking and hesitating," "did not seem as well as he was on the first day of trial," and that this "had a severe impact on [his] ability to sufficiently defend [petitioner] during trial." Petitioner's argument in this regard is vague and fails to cite to any examples in the record that would support such a claim. This Court has often stated that "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *State, Dep't of Health & Human Res.,*

---

[2]Petitioner's brief mentions, in passing, that he "may petition the court to have a post-conviction DNA test done pursuant to West Virginia Code § 15-2B-14[,]" but that the State's testing consumed the entire DNA sample found on the victim's body. Petitioner makes no further argument in this regard. Nonetheless, we note that, in April 2015, petitioner was granted additional time to file a request for post-conviction DNA testing, that counsel was appointed for this specific purpose, but that no such request was ever made. In fact, according to the order that is the subject of this appeal, in a June 1, 2015, letter to his counsel, petitioner stated: "'I don't want the post-conviction DNA testing 15-b-14 W.V. Code done at this time in my Habeas Corpus; I have other issues with merit that I want to stand on their own.'" The circuit court noted that "[a]s a result of this correspondence, [petitioner's counsel] did not file a motion for DNA testing and was simply awaiting entry of a decision on the merits as presented in the Amended Petition and at the Omnibus hearing." Petitioner does not now dispute these findings.

*Child Advocate Office ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). Petitioner's bare claim that his counsel's performance was adversely affected by his mid-trial illness is insufficient to meet petitioner's burden of proof under the *Strickland/Miller* test—that is, that counsel's performance was "deficient under an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W.Va. at 6, 459 S.E.2d at 117, at syl. pt. 5, in part. Therefore, we find that the circuit court did not err in concluding that defense counsel was not ineffective as a result of his medical illness.

In his next assignment of error, petitioner argues that the circuit court erred in concluding that the State was not required to disclose a police report the victim had filed in which she accused petitioner's wife of stealing a piece of jewelry from her home. The report was filed approximately seven months before the victim's death and was introduced at trial to impeach the wife's testimony that she and petitioner were close friends of the victim, that they frequently helped her around the house, and that they generally looked out for her well-being. Petitioner argues that the police report was potentially exculpatory evidence because it could have been used to demonstrate that someone other than petitioner committed the crimes for which he was convicted given "the highly questionable DNA 'match.'" Petitioner argues that the State's failure to disclose the report violated his constitutional right to a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1963).

In determining whether a *Brady* violation has occurred, this Court has held that

[t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). Petitioner has failed to show that the third component is satisfied. The victim's report to police that she suspected that petitioner's wife stole her jewelry is simply not relevant to the victim's murder and sexual assault that occurred some seven months later. Furthermore, petitioner's suggestion that the police report would have shown that someone other than petitioner (i.e., petitioner's wife) committed the crimes is not based in fact, particularly given the DNA evidence that petitioner could not be excluded as a potential donor of the secondary DNA evidence found on the victim's body. This Court is, thus, unpersuaded that the police report in any way prejudiced petitioner's defense at trial. Therefore, we find no error in the circuit court's conclusion that the State was not required to disclose the police report prior to trial.

We next address petitioner's argument that the results of the DNA testing linking petitioner to the crimes should not have been admitted at trial because (1) the evidence obtained from the victim's body was not properly protected against contamination because the State failed

to establish the chain-of-custody of the victim's body as it was transported from her home to the medical examiner's office, and (2) the sample of petitioner's blood obtained by police while he was in Wisconsin was improperly stored at the home of one of the investigating officers and was, thus, subject to contamination. Petitioner argues that the circuit court erred in finding that these evidentiary rulings were insufficient grounds upon which to grant habeas relief.

We find no error. First, regarding the State's alleged failure to establish the chain-of-custody of the victim's body, petitioner fails to cite to any place in the record where he raised this alleged error at trial. "It is a fundamental proposition of law that an appellate court generally will not entertain an alleged trial error unless it has been properly preserved at trial." *State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996). *See Miller*, 194 W.Va. at 17, 459 S.E.2d at 128 (stating that "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court will result' in the imposition of a procedural bar to an appeal of that issue") (quoting *U.S. v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994), *cert. denied*, 513 U.S. 1196 (1995); *Meadows v. Holland*, 831 F.2d 493, 498 (4th Cir.1987) ("West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review"). Thus, we decline to address this alleged error.

With regard to the sample of petitioner's blood obtained by police while petitioner was in Wisconsin, Detective Coffey testified that he traveled there on Thursday, March 21, 2002, and then stored the samples in the refrigerator at his home in West Virginia because, when he returned from Wisconsin on Friday, March 22nd, there was no property officer on duty at the police station to take custody of and refrigerate the blood sample. He testified that it was important to refrigerate the sample because, otherwise, it might overheat and be destroyed. Detective Coffey turned the samples over to the Huntington Police Department's forensic officer on the following Monday. This sample was subsequently tested in conjunction with dual DNA that was found on a swab taken from the victim's body. As previously recounted, the primary source of the DNA was determined to be the victim's and, as for the secondary source of the DNA, petitioner could not be excluded as the contributor.

This Court has explained that

[t]o allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period, nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with.

*State v. Davis*, 164 W. Va. 783, 786–87, 266 S.E.2d 909, 911–12 (1980) (citing *Munnerlyn v. State*, 576 S.W.2d 714 (Ark.1979)) (footnotes omitted). Furthermore,

[w]hile it is true that the preferred course is to establish a complete chain of evidence through the point at which the article is brought into the courtroom, such perfection is not an absolute requirement. . . . The mere possibility or speculation

that evidence could have been tampered with does not constitute sufficient ground for exclusion.

*Davis*, 164 W. Va. at 789, 266 S.E.2d at 913 (citing *Le Beau v. State*, 589 P.2d 1292 (Wyo.1979) (footnote omitted)).

This Court has held that "[a] trial court's evidentiary rulings . . . are subject to review under an abuse of discretion standard." Syl. Pt. 4, in part, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). In its order denying habeas relief, the circuit court noted that it previously denied petitioner's motion to suppress this evidence, and observed that "[t]here is no actual evidence of contamination or manipulation of the evidence. While certainly a perfect record regarding evidence handling is preferable, the record in this case is not a sufficient ground to grant the Petitioner the relief sought." Petitioner's claim that the blood sample taken from petitioner and refrigerated over a weekend at Detective Coffey's home subjected the sample to contamination (or, in fact, resulted in contamination), without more, is purely speculative. Accordingly, we find no error in the circuit court's conclusion that this evidence was properly admitted at trial.

Next, petitioner argues that the circuit court erred in failing to find that certain remarks made or elicited by the prosecutor at trial were prejudicial and resulted in petitioner receiving an unfair trial. Petitioner argues that, three times during closing argument, the prosecutor referred to "uncontradicted" DNA evidence that linked petitioner to the crimes, which petitioner claims improperly remarked on his failure to present expert scientific evidence that contradicted the State's DNA test results. Petitioner argues further that, during the State's opening and closing arguments, the prosecutor stated that, prior to her death, the victim was forced to drink rubbing alcohol, a fact petitioner claims was not supported by the evidence. Finally, petitioner argues that the prosecutor and several witnesses repeatedly referred to the victim's advanced age of ninety-two, a fact that was not an element of any of the offenses charged and can only be viewed as attempts to inflame the jury.

Our review of the record on appeal reveals that petitioner failed to object at trial to any of the remarks about which he now complains. This Court has cautioned that "[w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). With regard to purported improper remarks to a jury, this Court has held that

"[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. pt. 5, in part, *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987).

Syl. Pt. 2, *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014). Furthermore,

"[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to

raise the question thereafter either in the trial court or in the appellate court." Syl. pt. 6, *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945).

*Rollins*, 233 W. Va. at 720, 760 S.E.2d at 534, syl. pt. 3. Because petitioner failed to timely object to the prosecutor's remarks at the time they were made, he has waived the issue in this appeal.

Finally, we address petitioner's argument that the circuit court erred in failing to conclude that the prohibition against double jeopardy was violated by the court's failure to give a jury instruction on felony murder. *See* Syl. Pt. 8, *State v. Giles*, 183 W. Va. 237, 395 S.E.2d 481 (1990) ("'Double jeopardy prohibits an accused charged with felony murder, as defined by W.Va. Code 61-2-1 (1977 Replacement Vol.) from being separately tried or punished for both murder and the underlying enumerated felony.' Syllabus point 8, *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983)."). According to petitioner, based upon remarks made by the prosecutor in his opening statement, the State relied on the felony-murder theory to convict him of first degree murder. Petitioner argues that an instruction to that effect should have been given, as required by *Giles*, which requires the State to submit jury instructions that "distinguish between the two categories of first-degree murder—willful, deliberate, and premeditated killing and felony-murder—if, under the facts of the particular case, the jury can find the defendant guilty of either category of first-degree murder." 183 W.Va. at 239, 395 S.E.2d at 483, at syl. pt. 9, in part.

The record reveals that petitioner failed to object to the absence of a felony-murder jury instruction at trial.[3] This Court has long held that our "general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal." *State v. Jessie,* 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009). Thus, we decline to address this assignment of error.

For the foregoing reasons, we affirm.[4]

Affirmed.

**ISSUED:** June 8, 2018

---

[3]Petitioner, himself, did not offer a felony-murder instruction.

[4]In his final assignment of error, petitioner argues that the cumulative effect of all of the alleged errors raised herein deprived him of his constitutional right to a fair trial. The "[c]umulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *State v. Knuckles,* 196 W.Va. 416, 426, 473 S.E.2d 131, 141 (1996). Because we have found no error in this case, the cumulative error doctrine does not apply. Thus, this assignment of error is without merit.

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker